**CASCO INDEMNITY COMPANY,**
Plaintiff,

v.

**RHODE ISLAND INTERLOCAL RISK
MANAGEMENT TRUST, and Victor
Cipriano, Defendants.**

C.A. No. 94–0639L.

United States District Court,
D. Rhode Island.

June 20, 1996.

David E. Maglio, Morrison, Mahoney & Miller, Providence, RI, for Plaintiff.

James M. Green, Andrew M. Elmore, Powers, Kinder & Keeney, Providence, RI, for R.I. Interlocal Risk Management Trust.

Gerrick Van Deusen, Providence, RI, for Victor Cipriano.

## OPINION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Casco Indemnity Company ("Casco") and defendant Rhode Island Interlocal Risk Management Trust (the "Trust") seek to determine which of their respective insurance policies provides primary uninsured motorist coverage to defendant Victor Cipriano ("Cipriano") for damages sustained as a result of an automobile accident on November 20, 1993. For the reasons that follow, Casco's motion for summary judgment is denied, and the Trust's motion for summary judgment is granted.

### I. Facts

The underlying facts of this case are undisputed. On November 20, 1993, Cipriano was a passenger in the rear of a rescue truck owned by the Town of Johnston which was transporting a cardiac patient to Fatima Hospital in North Providence. At the time, Cipriano was employed full time as a lieutenant in the Johnston Fire Department. On the way to the hospital, the rescue truck collided with a vehicle operated by Anthony Damico ("Damico"), an uninsured motorist, at an intersection in Johnston. As a result of the accident, Cipriano sustained personal injuries. Cipriano has been reimbursed for all medical expenses and lost wages arising from the accident pursuant to R.I.Gen.Laws § 45–19–1.

At the time of the accident, the Town of Johnston and the rescue truck involved in the accident were covered by an insurance policy issued by the Trust, a Rhode Island corporation, which was effective from July 1, 1993 to June 30, 1994 (the "Trust Policy"). The Trust Policy provided, *inter alia,* automobile liability coverage in the amount of $1,000,000 per occurrence. The Trust Policy, however, did not contain uninsured motorist coverage. At the same time, Cipriano held a personal automobile insurance policy with Casco, a Maine corporation, which contained uninsured motorist coverage in the amount of $100,000 (the "Casco Policy").

On November 29, 1994, Casco brought suit in this Court seeking declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Essentially, Casco asks the Court to declare that the Trust Policy provides primary uninsured motorist coverage with respect to the accident, and that any uninsured motorist coverage available under the Casco Policy should be deemed excess to the coverage provided by the Trust.

According to Casco, although the Trust Policy does not contain uninsured motorist coverage, the uninsured motorist statute, R.I.Gen.Laws § 27–7–2.1, requires that uninsured motorist coverage be written into the Trust Policy, as a matter of law, in an amount equal to the bodily injury liability limits under the Trust Policy of $1,000,000. Casco also argues that any uninsured motorist coverage available under the Casco Policy should be regarded as excess to the coverage provided by the Trust Policy. In support of its argument, Casco relies on an "other insurance" provision in its policy which states that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

On January 17, 1995, the Trust counter-petitioned the Court for declaratory relief. The Trust concedes that R.I.Gen.Laws § 27–7–2.1 requires uninsured motorist coverage to be written into the Trust Policy as a matter of law. The Trust maintains, however, that such coverage should be written in at an amount equal to the statutory minimum of $25,000 for bodily injury to or death of one person in any one accident, and $50,000 for bodily injury to or death of two or more persons in any one accident.

Although the Trust concedes that uninsured motorist coverage should be written into its policy at the statutory minimum level, the Trust argues that an applicable policy exclusion prevents Cipriano from availing himself of any coverage under the Trust Policy. Specifically, the Trust relies on Exclusion (9), which states:

WITH REGARD TO ALL LIABILITY, THIS INSURANCE DOES NOT APPLY:

. . . . .

(9) for "personal injury" to:
 (a) an employee of the "Insured Member" arising out of and in the course of employment by the "Insured Member".

According to the Trust, this policy exclusion should apply to any uninsured motorist coverage which arises as a matter of law, as if such uninsured motorist coverage were included in the original policy. The Trust argues that Exclusion (9) would clearly apply to any claims made by Cipriano as a result of the accident, and would preclude uninsured motorist coverage under the Trust Policy. Therefore, the Trust requests the Court to declare that no coverage is available to Cipriano under its policy. The Trust moves for summary judgment on Casco's claim and on its counter-petition.

Casco contends that Exclusion (9) in the Trust Policy does not apply to coverage that arises as a matter of law. Casco also claims that Exclusion (9) was intended to apply only to third party liability coverages, and not first party coverages such as uninsured motorist coverage. Alternatively, Casco argues that the application of Exclusion (9) would violate the public policy mandated by the Rhode Island General Assembly in R.I.Gen. Laws § 27–7–2.1. Consequently, Casco moves for summary judgment on its claim and on the Trust's counter-petition. After hearing oral arguments on the cross motions, the Court took this matter under advisement. It is now in order for decision.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Court must view all facts and related inferences therefrom in the light most favorable to the nonmoving party. *Continental*

*Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). When cross motions for summary judgment are made, the Court must consider each motion separately, drawing inferences against each movant in turn. *Blackie v. State of Maine,* 75 F.3d 716, 721 (1st Cir.1996). Summary judgment is appropriate when there is no dispute as to any material fact and only a legal question remains. *Id.*

### III. Analysis

Both parties agree that Rhode Island law governs this diversity action. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The controlling statute in this case is R.I.Gen.Laws § 27–7–2.1. Both Casco and the Trust concur that the applicable version of this statute is the one that was in effect on July 1, 1993, the effective date of the Trust Policy. As of this date R.I.Gen.Laws § 27–7–2.1(A)(1) read, in pertinent part:

> No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death in limits set forth in each policy but in no instance less than the limit set forth in section 31–31–7 as amended, or section 31–32–24 as amended under the provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness or disease, including death, resulting therefrom, provided, however, that the insurer shall make uninsured motorist coverage available in an amount equal to the insured's bodily injury liability limits at the request of the named insured, and provided further, however, that the named insured shall have the option of selecting a limit in writing less than the

bodily injury liability coverage, but in no event less than the limit set forth in section 31–31–7 or section 31–32–24.

Similarly, both Casco and the Trust agree that, although the Trust Policy did not provide for uninsured motorist coverage, such coverage must be written into the Trust Policy, as a matter of law. R.I.Gen.Laws § 27–7–2.1 mandates that no policy of automobile liability insurance shall be delivered in Rhode Island unless it contains uninsured motorist coverage. It is well settled that "contracts of insurance carriers must conform to constitutionally valid conditions imposed by the legislature." *Allstate Ins. Co. v. Fusco,* 101 R.I. 350, 223 A.2d 447, 450 (1966). Therefore, since the Trust Policy is clearly an automobile liability insurance policy delivered in Rhode Island, it must contain uninsured motorist coverage. Consequently, since no uninsured motorist coverage is explicitly provided for in the Trust Policy, such coverage must be written into the Trust Policy by law. *See American Universal Ins. Co. v. Russell,* 490 A.2d 60, 62 (R.I.1985).

Although the Trust concedes that its policy must provide uninsured motorist coverage, it argues that Exclusion (9) prevents Cipriano from obtaining any uninsured motorist coverage under the Trust Policy. Exclusion (9) reads:

> WITH REGARD TO ALL LIABILITY, THIS INSURANCE DOES NOT APPLY:
>
> . . . . .
>
> (9) for "personal injury" to:
>> (a) an employee of the "Insured Member" arising out of and in the course of employment by the "Insured Member".

Casco does not dispute the fact that any claims made by Cipriano would be for personal injury arising out his employment by the Town of Johnston. Rather, it advances three arguments against the application of Exclusion (9). First, Casco argues that Exclusion (9) cannot apply to coverage that arises as a matter of law, since neither the Trust nor the Town of Johnston could have intended an exclusion for coverage they had not contemplated at the time of the execution of the contract. Second, Casco contends that

the express language of Exclusion (9) indicates that the parties to the Trust Policy intended it to apply only to liability coverages, and not to first party coverages such as uninsured motorist protection. Finally, Casco claims that the application of Exclusion (9) to the uninsured motorist coverage provided by the Trust Policy would violate the public policy mandated by the Rhode Island General Assembly in R.I.Gen.Laws § 27–7–2.1.

Casco's first argument against the application of Exclusion (9) is plainly without merit. As discussed above, contracts of insurance must comply with all applicable statutory mandates. *See Fusco,* 223 A.2d at 450. "In such a case, the statute essentially becomes part of the policy with like effect as if inscribed in the contract." *Gleason v. Merchants Mut. Ins. Co.,* 589 F.Supp. 1474, 1482 (D.R.I.1984). If the express language of an insurance policy conflicts with an applicable statute or the public policy expressed thereby, the particular policy clause must yield. *Id.* Logically, however, terms of an insurance contract that do not clash with statutory law shall continue to be enforced as the parties' agreement. Therefore, the Court must read the valid contractual terms together with the terms imposed by statute in order to effectuate the intent of the contracting parties.

Similarly, Casco's second argument against the application of Exclusion (9) must fail. According to Casco, the language of the Trust Policy indicates that Exclusion (9) was intended to apply only to liability coverages, and not to first party coverages like uninsured motorist protection. Casco relies heavily on the introductory phrase of the exclusion section of the Trust Policy which states "WITH REGARD TO ALL LIABILITY, THIS INSURANCE DOES NOT APPLY." According to Casco, the word "liability" could be read to mean either the liability of the Town of Johnston or the Trust. If "liability" refers to the liability of the Town of Johnston, the insured, then the exclusions that follow, including Exclusion (9), would

apply only to situations in which the Town incurs liability to some third party. Therefore, the exclusions would not apply to uninsured motorist coverage, a first party coverage.[1] If, however, "liability" refers to the liability of the Trust, the insurer, then the exclusions would apply to all coverages under the Trust Policy. Casco contends that since the terms of the Trust Policy are ambiguous as to which interpretation is proper, the policy should be construed against the Trust.

It is well settled that this Court will interpret the terms of an insurance policy according to the principles established for the construction of contracts generally. *Ferreira v. Travelers Ins. Co.,* 684 F.Supp. 1150, 1154 (D.R.I.1988). The Court's primary charge is to examine the insurance policy in its entirety in order to determine the intent of the parties and, whenever possible, to give that intent effect. *See Johnson v. Western Nat. Life Ins. Co.,* 641 A.2d 47, 48 (R.I.1994); *Peloso v. Imperatore,* 434 A.2d 274, 278 (R.I. 1981). The Court will begin its inquiry with the terms of the policy. "The language used in the policy must be given its plain, ordinary, and usual meaning. When the terms are found to be clear and unambiguous, the task of judicial construction is at an end. The contract terms must then be applied as written and the parties are bound by them." *Malo v. Aetna Casualty and Sur. Co.,* 459 A.2d 954, 956 (R.I.1983) (citations omitted).

When the policy language is susceptible to more than one reasonable interpretation, however, the contract will be strictly construed against the insurer. *Amica Mut. Ins. Co. v. Streicker,* 583 A.2d 550, 552 (R.I.1990). In searching for ambiguity, the Court will "accord equal importance to all relevant parts of the ... policy and [will] not simply establish ambiguity by viewing a word in isolation or by taking a phrase out of context." *Id.* Similarly, the Court will not "stretch its imagination in order to read ambiguity into a policy where none is present." *Mullins v. Federal Dairy Co.,* 568 A.2d 759, 762 (R.I.1990).

---

1. The Rhode Island Supreme Court has held that uninsured motorist coverage is not liability insurance, since it does not "protect the insured against liability he may incur to others but rather it compensates him for a loss caused by a specific class of tort-feasors—the uninsured." *Pickering v. American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584, 587 (1971).

After careful examination of the Trust Policy, the Court concludes that Exclusion (9) was clearly intended to apply to all liability on the part of the Trust, whether it be to a third party (liability coverage) or an insured (first party coverage). Construing the word "liability" in the introductory phrase of the exclusion section to mean the liability of the Town of Johnston makes no sense in light of Exclusion (2) which reads:

> WITH REGARD TO ALL LIABILITY, THIS INSURANCE DOES NOT APPLY:
>
> . . . . .
>
> (2) to "property damage" to property owned by the "Insured Member".

Obviously, the Town of Johnston could never be liable to a third party for damage done to its own property. Exclusion (2) must necessarily be an exclusion from liability on the part of the Trust. Therefore, the only reasonable interpretation is that the term "liability" as used in the introduction to the exclusion section must refer to the Trust's liability.

Further evidence that the term "liability" should be attributed to the Trust is found in Exclusions (28) and (29). Exclusion (28) begins: "The following additional exclusions are applicable to Insuring Agreement G (Medical Payments Liability)." Similarly, Exclusion (29) begins: "The following additional exclusions are applicable to Insuring Agreement H (Automobile Medical Payments Liability)." As Casco concedes, the two coverages referenced in Exclusions (28) and (29) are the only first party coverages expressly provided for in the Trust Policy. Since the exclusions contained within Exclusions (28) and (29), exclusions specific to the only first party coverages under the Trust Policy, are referred to as "additional exclusions," the only reasonable interpretation is that the general exclusions, including Exclusion (9) must also have been intended to apply to these first party coverages. Therefore, the Trust and the Town of Johnston intended Exclusion (9) to apply to first party coverages.

Based on the terms of the Trust Policy, it is clear that the parties intended Exclusion (9) to be applicable to all coverage under the Trust Policy, including first party coverages. Thus, the Court concludes that the parties would have intended Exclusion (9) to apply to uninsured motorist coverage had it been included in the Trust Policy. Consequently, Exclusion (9) should be applied to statutorily mandated uninsured motorist coverage in order to effectuate the clear intent of the parties.

 Casco's most notable argument is that application of Exclusion (9) would violate the public policy mandate of R.I.Gen.Laws § 27–7–2.1. Firmly entrenched in the law of Rhode Island is the requirement that insurance policies comply with all valid conditions imposed by the State's legislature. *See Aldcroft v. Fidelity and Casualty Co. of New York,* 106 R.I. 311, 259 A.2d 408, 413 (1969). Therefore, "[a]n uninsured motorist provision must comport with the public policy mandates intended by the General Assembly." *Carlton v. Worcester Ins. Co.,* 744 F.Supp. 395, 399 (D.R.I.1990), *aff'd,* 923 F.2d 1 (1st Cir.1991). As a result, "[p]rovisions of insurance policies that restrict coverage afforded by the uninsured-motorist statute are void as a matter of public policy." *Rueschemeyer v. Liberty Mut. Ins. Co.,* 673 A.2d 448, 450 (R.I.1996).

The Court must examine Exclusion (9) to the Trust Policy in light of the public policy underlying R.I.Gen.Laws § 27–7–2.1. The Rhode Island Supreme Court has declared repeatedly that "in enacting § 27–7–2.1 the Legislature intended that as a matter of public policy, protection should be given to the named insured against economic loss resulting from injuries sustained by reason of the negligent operation of an uninsured vehicle." *Rueschemeyer,* 673 A.2d at 450. "This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." *Streicker,* 583 A.2d at 553.

Although there are numerous Rhode Island Supreme Court opinions examining the issue of whether a particular exclusion to uninsured motorist coverage violates public policy, none of these holdings deal with an exclusion similar to Exclusion (9). These

decisions do, however, lay out principles that are of substantial assistance to the Court in discerning how the Rhode Island Supreme Court would rule on this issue of first impression.

The Rhode Island Supreme Court has created a fundamental distinction between insurance policy exclusions that restrict the class of insureds covered by the policy, and exclusions that narrow the coverage afforded to the named insured under the policy. The former have been allowed, while the latter have generally been found to violate the public policy expressed in the uninsured motorist statute.

The Rhode Island Supreme Court has consistently held that the determination of the class of persons to be covered by a policy of insurance containing uninsured motorist protection is to be made according to the terms of the policy. Consequently, the Court has held that policy exclusions which simply designate the class of insureds do not violate the public policy of the uninsured motorist statute. For example, the Court has upheld the following policy exclusions: an exclusion for any insured while employed in or engaged in an automobile business, *Murray v. Remuck,* 108 R.I. 179, 273 A.2d 491 (1971); an exclusion for bodily injury to an insured while occupying an owned but not insured vehicle, *Dellagrotta v. Liberty Mut. Ins. Co.,* 639 A.2d 980 (R.I.1994), *Employers' Fire Ins. Co. v. Baker,* 119 R.I. 734, 383 A.2d 1005 (1978); and an exclusion for a relative of the named insured who owns an automobile, *Malo v. Aetna Casualty and Sur. Co.,* 459 A.2d 954 (R.I.1983).

The Rhode Island Supreme Court has explicitly stated that the uninsured motorist statute does not prevent the parties to an insurance contract from restricting the class of persons to be covered thereunder. As the Court stated in *Malo:*

Neither the terms of the statute nor the public policy expressed therein mandates what class of persons must be extended coverage, nor do they disallow any restriction on that class. Rather, the designation of what persons are insured for purposes of this statute is left to the terms of the

particular insurance policy. 459 A.2d at 956–57.

Similarly, then-District Court Judge Selya made the following observations with respect to the Supreme Court precedent on this issue:

The Rhode Island courts have consistently interpreted § 27–7–2.1 to provide *policyholders* with optimum coverage. At the same time, however, the state supreme court has been chary of extending coverage to other persons in the face of clear and explicit contract provisions to the contrary. While the blanket protection of the uninsured motorist clause is tucked snugly about the purchaser of a policy of motor vehicle insurance issued in Rhode Island, the insurer retains considerable say in determining which other persons can slip beneath the coverlet. *Gleason,* 589 F.Supp. at 1483.

The Rhode Island Supreme Court, however, has regularly held that policy exclusions that limit the extent of uninsured motorist protection offered to the named insured violate the public policy underlying the uninsured motorist statute. In *Aldcroft,* 259 A.2d at 414, the Rhode Island Supreme Court held that an insurance policy clause which reduced payments under uninsured motorist coverage by the amount paid to the named insured under workers' compensation was void to the extent that it resulted in an amount of coverage less than the statutory minimum. Similarly, in *Poulos v. Aetna Casualty & Sur. Co.,* 119 R.I. 409, 379 A.2d 362, 364 (1977), the Court held that a similar policy clause was contrary to public policy to the extent that it left the named insured uncompensated for his actual loss. Rather, the Court only allowed such a deduction to the extent that the workers' compensation benefits represented a double recovery on the part of the named insured. *Id.* 379 A.2d at 365.

More recently, the Rhode Island Supreme Court held that a provision which excluded uninsured motorist coverage for accidents involving a snowmobile violated the uninsured motorist statute. *Sentry Ins. Co. v. Castillo,* 574 A.2d 138, 140 (R.I.1990). Finally, in its recent opinion in *Rueschemeyer,* 673 A.2d at

451, the Court held that a policy exclusion removing government owned vehicles from the definition of "uninsured motorist" was void as a matter of public policy. According to the Court, "[a]n insured is as susceptible of economic loss resulting from the operation of a vehicle owned and operated by a governmental entity as he or she is from the operation of a vehicle owned by another." *Id.*

The Court must examine Exclusion (9) within the framework of this precedent. The Trust Policy was issued to the Town of Johnston as the "Insured Member". Under the Trust Policy, however, the definition of the "Insured Member" included the following:

[A]ll persons who were, now or shall be lawfully elected or lawfully appointed officials, trustees, directors, employees or council members of the "Insured Member" in the regular service of the "Insured Member" during the existence of this Insurance.

Therefore, Cipriano, as an employee of the Town, was an "Insured Member" under the Trust Policy. Under Exclusion (9) to the Trust Policy, however, employees of the Town were excluded as a class from any first party coverage for their personal injuries. As previously noted, Cipriano's claims fall squarely within this exclusion.

This Court opines that Exclusion (9) to the Trust Policy represents a reasonable attempt to restrict the class of individuals covered by the policy, and as such it does not contravene the public policy of the uninsured motorist statute. Excluding from the class of insureds under the Trust Policy all employees of the Town with personal injury claims arising out of their employment with the Town is entirely reasonable in light of the fact that a workers' compensation system has been established to cover exactly these claims.[2] Therefore, Exclusion (9) serves the impor-

tant purpose of allowing the Town to reduce its overall liability for insurance premiums by not forcing it to pay for coverage for a group of claims already covered by its workers' compensation insurance. Likewise, Exclusion (9) offers the Trust the financial protection of not having to provide insurance coverage to a class of individuals not included in their assessment of risk under the policy.

This Court is satisfied that in enacting § 27–7–2.1 the Rhode Island General Assembly did not intend to require government entities to purchase uninsured motorist coverage for a class of employees already within the umbrella of statutorily mandated workers' compensation coverage.[3] Although the legislature's clear intent was to protect the "named insured against economic loss resulting from injuries sustained by reason of the negligent operation of an uninsured vehicle," *Rueschemeyer,* 673 A.2d at 450, "the designation of what persons are insured for purposes of this statute is left to the terms of the particular insurance policy." *Malo,* 459 A.2d at 957. Therefore, excluding employees already covered by workers' compensation from uninsured motorist coverage does not negate the intent of the legislature.

As mentioned above, Cipriano is not without redress for his injuries. Pursuant to R.I.Gen.Laws § 45–19–1, he has been reimbursed for all of his medical expenses and lost wages arising from the accident. Cipriano has also protected himself by purchasing personal insurance coverage from Casco containing $100,000 in uninsured motorist coverage. Therefore, excluding Cipriano from coverage under the Trust Policy does not leave him unprotected from injuries resulting from the negligence of an uninsured motorist.

**2.** The Rhode Island Workers' Compensation Act, R.I.Gen.Laws §§ 28–29–1 to 28–37–31 (1986), provides a system of no-fault compensation to employees for injuries arising out of their employment. This scheme, however, does not apply to members of regularly organized fire and police departments. R.I.Gen.Laws § 28–29–2 (1993). These employees are covered by the more generous provisions of R.I.Gen.Laws § 45–19–1 which provides that any police officer, fire fighter, crash rescue crewperson or fire marshall

injured in the performance of his or her duties shall be reimbursed for any lost wages and medical expenses resulting from their injury.

**3.** Interestingly, the Rhode Island Supreme Court has held that a self-insured public carrier is not required by § 27–7–2.1 to afford uninsured motorist coverage to its passengers. *Ellis v. Rhode Island Pub. Transit Auth.,* 586 A.2d 1055, 1058 (R.I.1991).

Consequently, this Court holds that Exclusion (9) applies to Cipriano's claims for personal injuries as a result of the accident, thereby precluding him from coverage under the Trust Policy. Since the Court holds that Cipriano may not avail himself of uninsured motorist coverage under the Trust Policy, it is unnecessary to decide how much coverage there would have been under the Trust Policy. With regard to the Casco Policy, any coverage available to Cipriano is to be governed by the terms of the agreement between the parties.

## IV. Conclusion

For the foregoing reasons, plaintiff Casco's motion for summary judgment is denied, and defendant Trust's motion for summary judgment is granted. The clerk will enter judgment for the Trust declaring that its policy does not afford uninsured motorist coverage to Cipriano for the accident of November 20, 1993.

It is so ordered.