Tammy HOPKINS and Joseph
Hopkins, h/w, Appellants

v.

ERIE INSURANCE COMPANY,
Appellee.

Superior Court of Pennsylvania.

Argued March 20, 2013.
Filed April 19, 2013.

Marc A. Weiberg, Jenkintown, for appellants.

Karen L. Tucci, Lansdale, for appellee.

BEFORE: GANTMAN, ALLEN, and OTT, JJ.

OPINION BY ALLEN, J.:

Tammy Hopkins, ("Mrs. Hopkins"), and her husband Joseph Hopkins, (collectively "Appellants"), appeal from the trial court's order denying their petition to appoint arbitrators and to compel Erie Insurance Company ("Erie") to arbitration. We affirm.

The trial court recounted the facts and procedural history of this case as follows:

On January 11, 1999, [Mrs. Hopkins], [a] resident of 6 Hellberg Avenue, Chalfont, PA 18914, was involved in a motor vehicle accident and sustained personal injuries. [Mrs. Hopkins'] vehicle was struck by an underinsured motorist and her personal injuries were the result of the negligence of the underinsured tortfeasor. At the time of this accident, [Erie] was the insurer of [Mrs. Hopkins,] whose coverage included underinsured motorist accidents.

The matter before this court arises out of Appellants' Petition For Appointment of Arbitrators and Request to Compel Arbitration. On January 5, 2001, a complaint was filed in the Court of Common Pleas of Montgomery County. The underlying claim against the tortfeasor in the aforementioned accident was settled, and Appellants submitted correspondence to Erie, on June 11, 2004. At the time of that submission, Appellants advised Erie that they wished to pursue underinsured motorist arbitration. Appellants allege that they spoke directly with Megan Rooney, the claims adjuster for Erie, regarding issues related to the impending arbitration. On January 8, 2008, Appellants sent a Demand letter to Erie along with [Mrs. Hopkins'] medical records. On February 6, 2008, Appellants were asked by Erie to send medical records and authorizations. Thereafter, Megan Rooney forwarded authorizations to both State Farm Insurance Co. and Dr. William Truscott, while keeping the third authorization in Erie's Personal Injury Protection (PIP) file.

On March 9, 2009, prior counsel for Erie sent a letter to Appellants' counsel indicating that the statute of limitations had run on their underinsured motorist claim, and that Erie was going to close its file.

On December 2, 2010, Appellants filed a Petition for Appointment of Arbitrators and to Compel Arbitration. The Honorable Kent H. Albright, now retired, entered an order on December 7,

2011, which denied Appellants' Petition and dismissed Appellants' claim.

On December 22, 2011, Appellants filed their Notice of Appeal from the December 7, 2011, ruling. The Honorable Kent H. Albright ordered the Appellants to file a Concise Statement of Matters Complained of on Appeal on December 30, 2011. Appellants did so on January 18, 2012.

The undersigned authors this Opinion in support of the ruling of the since retired, Honorable Kent H. Albright, who presently serves as a Montgomery County Court of Common Pleas Senior Judge.

Trial Court Opinion, 8/16/12, at 1–2.

Our review of the record further reveals that Appellants averred:

Erie submitted requests for medical records to [Appellants]. On January 8, 2008, [Appellants] sent a Demand Letter, along with medical records of [Mrs. Hopkins] to Erie. On February 6, 2008, Erie sent correspondence to [Appellants] asking for additional medical records and authorizations. On March 8, 2008, as requested, [Appellants] mailed Erie three (3) medical authorizations to obtain medical, insurance, and/or employment information.

Appellants' Memorandum of Law in Support of Petition for Appointment of Arbitrators and to Compel Arbitration, 11/30/11, at 2.

Appellants appended to their memorandum a June 11, 2004 letter to Erie asking for permission to settle with the tortfeasor, Elizabeth Gradel, demanding underinsured motorist arbitration, and naming their choice of arbitrator. *Id.* at Exhibit A. In the letter, Appellants asked Erie to assign counsel "so that the matter may be scheduled accordingly." *Id.* Appellants further appended Erie's June 28, 2004 response granting permission for Appellants to set-

tle with Gradel, and noting Erie's "understanding that [Appellants] are presenting an Underinsured Motorist claim in reference to this matter." *Id.* at Exhibit B. Erie's June 28, 2004 letter asked Appellants to "forward any and all medical records and any and all wage loss records you have in reference to this loss." *Id.* Appellants additionally included an Erie claims file entry dated September 5, 2006, quoting Appellants' counsel as saying "we've gotta get moving on this—why don't we name the arbitrators?" *Id.* at Exhibit C. The September 5, 2006 claims entry contains the following notation by Erie adjuster Megan Rooney:

I reminded [Appellant's counsel] that he has not sent me meds (demand package) yet . . . He asked me to send request for meds again. He does not have any prior meds. I advised I'll need them too so if he could get me the name(s) & info on [treating] Physician(s) prior to [motor vehicle accident] that would be great. Also I req. meds for the subsequent loss.

*Id.*

Appellants' memorandum also contained their January 8, 2008 submission ("demand package") to Erie of a list of 21 medical providers for Mrs. Hopkins, along with "medical records, reports, and bills." *Id.* at Exhibit E. The bill for three of the medical providers was noted "to be determined." *Id.* As Exhibit F, Appellants included Erie's February 6, 2008 response to Appellants' demand package, in which Erie stated it "would like to obtain additional records and information in reference to the UIM claim of [Mrs. Hopkins]. I have enclosed three Authorization forms." *Id.* at Exhibit F. Erie's February 6, 2008 correspondence further expressed Erie's interest in securing records regarding a subsequent motor vehicle accident Mrs. Hopkins had on December 18, 2002. *Id.* Appellants executed the three authoriza-

tions and returned them to Erie on March 8, 2008. *Id.* at Exhibit G.

As Exhibit H, Appellants appended a March 21, 2008 Erie claims file entry noting Erie's review of Mrs. Hopkins' claims of injuries regarding her December 18, 2002 accident, which included complaints of "[headaches], depression, neck/back pain & spasm, TMJ & Abnorm. Fatigue. Meds paid total $24,541." *Id.* at Exhibit H. At Exhibit J, Appellants showed Erie's assignment of Forry Ullman as Erie's counsel in relation to Appellants' underinsured motorist claim.

Erie filed a Supplemental Memorandum of Law opposing Appellants' petition and appended excerpts from the deposition of their UIM claims adjuster Megan Rooney. Erie's Memorandum of Law in Opposition to Appellants' Petition for Appointment of Arbitrators and to Compel Arbitration, Exhibit B. A review of Ms. Rooney's deposition excerpts reveals that following the three authorizations which Erie forwarded to Appellants, and which Appellants executed, Erie sent six additional authorizations for Appellants to sign. *Id.* Those six supplemental authorizations were never returned by Appellants. *Id.* Ms. Rooney further testified that within the January 8, 2008 demand package from Appellants were the only medical records she ever received directly from Appellants. *Id.* Ms. Rooney indicated she sent "around a dozen" letters to Appellants' counsel seeking additional medical records, and received no response. *Id.* Ms. Rooney testified that after notifying Appellants' counsel in a March 9, 2009 letter that the statute of limitations had expired, Erie kept their file open until May 2009 to see if "there was a reaction from [Appellant's counsel]." *Id.* Appellants did not file their petition to appoint arbitrators and to compel arbitration until December 2, 2011, the denial of which is the subject of this appeal.

Appellants present the following issues for our review:

A. Whether the Trial Court made an error of law and manifestly abused its discretion in its calculation of the statute of limitations?

B. Whether the Trial Court made an error of law and manifestly abused its discretion in determining that the Statute of Limitations was not equitably tolled?

C. Whether the trial court made an error of law and manifestly abused its discretion in denying [Appellants'] Petition for Appointment of Arbitrators and to Compel Arbitration where the weight of the evidence overwhelmingly demonstrated that [Erie] failed to fulfill its obligation to [Appellants]?

Appellants' Brief at 4.

 It is well-settled that:

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

*Elwyn v. DeLuca,* 48 A.3d 457, 461 (Pa.Super.2012) (internal citation omitted).

Here, the parties do not dispute that Erie's policy contained an arbitration provision constituting a valid agreement to arbitrate. Likewise, the parties do not disagree that Appellants' underinsured claim falls within the scope of the agreement to arbitrate. The controversy at issue is whether the trial court properly denied Appellants' petition to appoint arbitrators and to compel arbitration based on

the expiration of the four-year statute of limitations applicable to contracts under 42 Pa.C.S.A. § 5525(a)(8). Appellants' challenge to the trial court's statutory interpretation "is a question of law and, as such, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Arroyo*, 991 A.2d 951, 955 n. 2 (Pa.Super.2010).

In their first issue, Appellants contend that the trial court incorrectly calculated the statute of limitations because "the cause of action on the contract did not accrue until the contract was breached [and] in this case, no breach occurred until Erie denied the claim on March 9, 2009." Appellants' Brief at 9. We disagree.

The trial court explained:

In the Commonwealth of Pennsylvania, the statute of limitations for an underinsured motorist benefits claim is governed by the statute of limitations for contracts. As indicated by the Court in *Gerard J. Boyle v. State Farm Mutual Automobile Ins. Co.* [310 Pa.Super. 10], 456 A.2d 156, 159–60 (Pa.Super.1983), "[an action by an insured against his automobile insurance carrier essentially sounds in contract rather than in tort.]" As explained in *Boyle,* the fact that the underlying occurrence sounds in tort law has no bearing upon the determination of an underinsured motorist claim. Likewise, if it were not for the contract between Erie and Appellants herein, there would be no obligation between the parties.

Further, 42 Pa.Cons.Stat. § 5525(a)(8), provides for a four (4) year statute of limitations for contracts based upon writings. It states, "the following actions and proceedings must be commenced within four years ... an action upon a contract, obligation, or liability founded upon a writing ..." Thus, based upon *Boyle* and 42 Pa.Cons.Stat.

§ 5525(a)(8), it is clear that the underinsured motorist claim at issue is governed by the four (4) year statute of limitations for contracts.

\* \* \*

Research revealed no precedent to govern this court as to when the statute of limitations begins to toll on an underinsured motorist claim. However, this court was *persuaded* by *Buhl,* which held that a final settlement of the underlying claim is necessary to toll the statute of limitations. *Buhl v. Allstate Ins. Co.,* No. 98–08114, 2000 WL 1865153 (Pa.Com.Pl.2000) (*citing State Farm Mut. Auto. Ins. Co. v. Rosenthal,* 484 F.3d 251, 257 (3d Cir.2007)). The court was likewise persuaded by the cases of *Walker v. Providence Ins. Co.,* No. CA 97–7455, 1998 WL 195652 (E.D.Pa.1998) and [*Liberty Mutual Fire Insurance Co. v.*] *Weisbaum,* 2011 WL 4632479 (E.D.Pa.1998 [2011]). In *Walker,* the federal court held that assurances in a letter, that defense counsel will appoint an arbitrator, do not excuse the other party from their need to file a motion to compel the appointment of an arbitrator prior to the expiration of the statute of limitations. [*Walker* ], 1998 WL 195652 (E.D.Pa.1998). In addition, the court in *Weisbaum* held that the simple fact that steps have been taken to resolve a matter through arbitration, is not enough to overcome the statute of limitations. [*Weisbaum* ] 2011 WL 4632479 (E.D.Pa. 1998 [2011]). Therefore, based on the foregoing, the court properly determined that the statute of limitations on Appellants' underinsured motorist claim tolled with the settlement of their underlying claim.

In the case at hand, the final settlement occurred on January 6, 2005. The Appellants did not file their Petition to Appoint Arbitrators until December 2,

2010, which is a time period of six (6) years. This clearly exceeds the four (4) year contract statute of limitations requirement. Therefore, the court properly deemed Appellants' underinsured motorist claim to be time-barred.

Trial Court Opinion, 8/16/12, at 3–4.

We agree with the trial court that there is no precedent under Pennsylvania law establishing when the statute of limitations for an underinsured motorist claim begins to run. However, there are cases that are instructive to the resolution of this issue.

Appellants assert that the action accrued when Erie "breached" the contract by denying the claim. Appellant's Brief at 9. We determined in *Gerard J. Boyle v. State Farm Mutual Automobile Insurance Company*, 310 Pa.Super. 10, 456 A.2d 156 (1983), that:

> Under contract principles, an action to enforce a contract does not accrue until the party's rights under the contract have *vested*. In the case of an uninsured or underinsured motorist coverage endorsement, the insured's right to payment does not vest until three events have occurred: (1) the insured was in a motor vehicle accident, (2) the insured sustained bodily injury as a result of that accident, and (3) the insured knows of the uninsured status of the other owner or operator.

*Boyle*, 456 A.2d at 162–163 (emphasis supplied).

■ As an expansion of our determination in *Boyle*, the third event vesting the right to payment under an *under* insured motorist claim would be when the insured knows of the *under* insured status of the other owner or operator. Such knowledge would be gleaned when the claim against that owner or operator results in a settlement or judgment which is less than the insured's loss from the accident.

Such an expansion of *Boyle* would be consonant with the reasoning espoused in *State Farm Mutual Automobile Insurance Company v. Brian D. Rosenthal*, 484 F.3d 251, 257 (3d Cir.2007). In *Rosenthal*, the Third Circuit Court of Appeals considered the proper triggering event for the statute of limitations of an underinsured motorist claim, and reasoned:

> Because this case involves a novel question of Pennsylvania law not addressed by the Supreme Court of the Commonwealth, our task "is to predict how that court would rule." *Pa. Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). In making this prediction, "we must consider the pronouncements of the lower state courts." *Connecticut Mutual Life Ins. Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir.1983). Although such pronouncements "are not controlling on an issue on which the highest court of the state has not spoken, [we] must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985) (citations omitted).

> \* \* \*

> Based on our review of relevant Pennsylvania Superior Court caselaw ... [ ] ... and considering the practical consequences of this decision, we predict that the Pennsylvania Supreme Court would start running the four-year statute of limitations on underinsured motorist claims on the date on which the insured settles with the adverse driver for less than the value of the insured's damages.

> \* \* \*

While no Pennsylvania state court has addressed the statute of limitations for *under* insured motorist claims, there is

ample caselaw from the Pennsylvania Superior Court regarding the statute of limitations for *un* insured motorist claims. *See Clark v. State Farm Auto. Ins. Co.,* 410 Pa.Super. 300, 599 A.2d 1001 (1991); *Seay v. Prudential Prop. & Cas. Ins.,* 375 Pa.Super. 37, 543 A.2d 1166 (1988); *Boyle v. State Farm Mut. Auto. Ins. Co.,* 310 Pa.Super. 10, 456 A.2d 156 (1983). These cases are in agreement that the four-year statute of limitations begins to run when the right to payment of a benefit accrues to the insured, i.e., when "(1) the insured is in a motor vehicle accident; (2) the insured sustains bodily injury as a result of the accident; and (3) the insured knows of the uninsured status of the other owner or operator." *Clark,* 599 A.2d at 1005.

In *Wheeler v. Nationwide Mutual Insurance Company,* a district court in the Eastern District of Pennsylvania examined this Superior Court line of uninsured motorist cases and determined "[the three] criterion [listed above] apply also to underinsured motorist cases." 749 F.Supp. 660, 662 (E.D.Pa.1990). Interpreting these criterion in the underinsured context, *Wheeler* concluded the statute does not begin to run until the underinsured status of the adverse driver is definitively established, and reasoned as follows:

> Unlike an uninsured motorist case where the issue of whether a motorist has coverage at all is easily determined, the question of whether an insured motorist has *enough* coverage is not. This court holds that it is only at the time that [the insured] actually settled ... with the underinsured motorist's insurance company ... that the status of the situation as one involving an underinsured motorist was definitely ascertainable.

*Id.* (emphasis in original). Consequently, *Wheeler* concluded that the statute of limitations does not begin to run on an underinsured motorist claim until the insured settles his claim with the underinsured driver or obtains a judgment against him.

\* \* \*

*Rosenthal* argues the Pennsylvania Supreme Court would begin running the statute of limitations on the date the insured settles his claim with or obtains an award from the underinsured driver, and we believe he is correct. First, this approach has roots in existing Pennsylvania caselaw. *See Wheeler,* 749 F.Supp. at 662 (deriving this approach from the Superior Court's uninsured motorist claim line of cases). Second, the adoption of this approach harmonizes the law with respect to the statute of limitations involving uninsured and underinsured claims. That is, regardless of whether the adverse driver is uninsured or underinsured, the date on which the statute of limitations begins to run is essentially the same, i.e., the date on which the insured definitively ascertains the deficient insurance status of the adverse driver. Finally, this approach is practical, in that it gives an insured time to assess his own damages and learn of the adverse driver's policy limits. In this way, it eliminates the need for the insured to prematurely file an underinsured motorist claim in order to protect his rights. Accordingly, we hold that the four-year statute of limitations begins to run when the insured settles his claim with or obtains an award from the underinsured driver.

*Rosenthal,* 484 F.3d at 255–257.

The federal court in *Rosenthal* declined to find that the statute of limitations begins to run when the insurance company denies the claim. In rejecting this approach, the *Rosenthal* court reasoned:

[ ] This approach, while amply supported by general contract principles, did not consider the Superior Court's decisions with respect to uninsured motorist claims. Given the similarity between uninsured and underinsured claims, we believe these decisions should help guide our analysis. In addition, the District Court's approach does not account for the proclivity of Pennsylvania to treat insurance contracts differently from other types of contracts. *See, e.g.,* Motor Vehicle Financial Responsibility Law, 75 Pa. Cons.Stat. §§ 1701–1799.7 (specially regulating motor vehicle insurance contracts); *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346, 1351 (1978) (explaining "normal contract principles [are] no longer applicable in insurance transactions"); *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 196–97 (1977) (rejecting a "strict contractual approach" when construing an insurance policy because such an approach "fails to recognize the true nature of the relationship between insurance companies and their insureds"); *Drelles v. Manufacturers Life Ins. Co.,* 881 A.2d 822, 836 (Pa.Super.Ct.2005) (explaining that not all contract principles apply to consumer insurance contracts); *Pressley v. Travelers Prop. Cas. Corp.,* 817 A.2d 1131 (Pa.Super.Ct.2003) (explaining "because the insurer is in the business of writing insurance agreements, the recent trend in insurance cases has been away from strict contractual approaches"); *but see Nationwide Mut. Ins. Co. v. Johnson,* 450 Pa.Super. 519, 676 A.2d 680, 684 (1996) (asserting that an insurance contract is no different than any other contract). Finally, as a practical matter, this approach has no mechanism for limiting stale claims and could be seen as encouraging insurers to either routinely deny underinsured motorist benefits to claimants (to start the clock running) or compel arbitration with respect to such claims, potentially confusing consumers.

*Rosenthal,* 484 F.3d at 256–257. We agree with the Third Circuit Court of Appeals.

■ Here, applying *Boyle* and *Rosenthal,* we hold that the four-year statute of limitations on underinsured motorist claims begins to run when the insured settles with, or secures a judgment against, the underinsured owner or operator. Accordingly, Appellants' underinsured motorist claims in this case are barred by the statute of limitations. Appellants settled with the tortfeasor in the underlying action, "on or about December 4, 2004 with an Order to Settle, Discontinue and End being filed … January 6, 2005." Appellants' Reply to [Erie's] New Matter in Response to [Erie's] Opposition to Petition for Appointment of Arbitrators and to Compel Arbitration, 1/31/11, at 2. Appellants therefore had until December 4, 2008 to file their petition to appoint arbitrators and to compel arbitration. Appellants did not file their petition until December 2, 2010. Given the foregoing, we affirm the trial court's order denying Appellants' petition due to the expiration of the statute of limitations.

■ Appellants' remaining issues challenge the trial court's failure to exercise its equitable powers to grant Appellants' petition, and we review them under an abuse of discretion standard. *See In re Estate of Cherwinski,* 856 A.2d 165, 167 (Pa.Super.2004). An abuse of discretion exists where the trial court's determination overrides or misapplies the law, its judgment is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *See Majczyk v. Oesch,* 789 A.2d 717, 720 (Pa.Super.2001). We find no abuse of discretion here.

In their second issue, Appellants contend that the trial court erred in not equitably tolling the statute of limitations. Appellants assert that "[t]he rule which equitably tolls the statute because of the misleading conduct of the insurer is closely related to the 'discovery rule' which provides that a cause of action does not accrue until the victim first has reason to discover the injury." Appellants' Brief at 14.

We have explained:

As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. *Walters v. Ditzler,* 424 Pa. 445, 450–451, 227 A.2d 833, 835 (1967); *Taylor v. Tukanowicz,* 290 Pa.Superior.Ct. 581, 435 A.2d 181 (1981); *Med–Mar, Inc. v. Dilworth,* 214 Pa.Superior.Ct. 402, 257 A.2d 910 (1969). Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964), *Bell v. Brady,* 346 Pa. 666, 31 A.2d 547 (1943); even though a person may not discover his injury until it is too late to take advantage of the appropriate remedy, this is incident to a law arbitrarily making legal remedies contingent on mere lapse of time. Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute.

\* \* \*

The "discovery rule" is such an exception, and arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983) (emphasis in original).

Appellants cite *Nesbitt, supra,* for the proposition that "even in a third party context, an estoppel is created where the defendant 'caused the plaintiff to unduly relax her vigilance and delay the institution of the ... action to a time beyond the statutory limitation period.'" Appellants' Brief at 15. However, in *Walters, supra,* our Pennsylvania Supreme Court applied *Nesbitt, inter alia,* to affirm summary relief in an insurer's favor where the parents of a severely injured child failed to sue on his behalf within the statutory period. In denying relief to the plaintiffs, our Supreme Court stated "[h]ighly significant and indicative of [the plaintiffs'] supine negligence, lassitude and lack of diligence is the uncontradicted fact that, even after they had been notified that the insurance company could not aid them in the matter, they waited for approximately fourteen months before they instituted this action." *Walters,* 227 A.2d at 836. Likewise, there is no better example of Appellants' own "supine negligence, lassitude and lack of diligence" than the 21 months that elapsed between Erie's March 9, 2009 notification to Appellants of the expiration of the statute of limitations, and Appellants' filing of its petition on December 2, 2010. Accordingly, we cannot conclude that the trial court erred in declining to equitably toll the statute of limitations.

Appellants in their third issue maintain that Erie "in bad faith, gave the impression that it was evaluating the materials submitted by its insured with a view towards entering into a good faith settlement. Having done so, Erie is estopped from asserting the statute of limitations defense." Appellants' Brief at 16.

Appellants quote our decision in *O'Brien v. Sovereign Camp of the Woodmen of the World,* 122 Pa.Super. 39, 184 A. 546 (1936), estopping an insurer from asserting a statute of limitations defense because "it could be fairly assumed . . . that by these friendly negotiations [between plaintiff and insurer], the plaintiff was induced to believe that there was an abandonment of this limitations provision . . . [and] the defendant's conduct had a tendency to influence the plaintiff to withhold any litigation." Appellants' Brief at 16 *citing O'Brien, supra,* at 548. However, Appellants in the present case never entered into any negotiations with Erie.

Appellants further cite a New Jersey Supreme Court case rejecting an insurer's statute of limitations defense because "[i]t was not reasonable for [the insurer] to sit back, request and receive various documents over a three and one-half year period, and then deny plaintiff's claim because he failed to file a complaint . . . or request arbitration prior to the running of the . . . statute of limitations." Appellants' Brief at 17 *citing Price v. New Jersey Manufacturers Insurance Company,* 182 N.J. 519, 867 A.2d 1181 (N.J.2005). Appellants' reliance on *Price* is misplaced because while Erie repeatedly requested records from Appellants, Appellants either failed to respond or did so inadequately.

Despite Erie's request for records in their June 28, 2004 letter, Appellants did not provide a demand package containing medical records, reports and bills for Mrs. Hopkins until January 8, 2008. This packet did not include the billing amount for three of Mrs. Hopkins medical providers. Erie's counsel in a letter dated August 28, 2008 specifically advised Appellants' counsel that "since approximately March 9, 2008, I have been writing to you and leaving you messages but my efforts go without a response. [ ] On March 9, 2008, I

sent you authorizations which have yet to be returned to me." Appellants' Reply to [Erie's] New Matter, 1/31/11, at Exhibit E. Further, Erie's counsel requested, "[p]lease advise at this time if [Mrs.] Hopkins continues to be interested in pursuing a claim against [Erie], as a result of the motor vehicle accident of January 11, 1999." *Id.* According to Megan Rooney, Erie's adjuster, Appellants never returned those six authorizations to Erie. Appellants' Memorandum of Law in Support of [Appellants'] Petition for Appointment of Arbitrators and to Compel Arbitration, 11/30/11, at Exhibit M.

In a subsequent letter dated March 9, 2009, Erie's counsel reiterated to Appellants' counsel that "[s]ince approximately March 2008 I have been writing and calling you regarding [Mrs.] Hopkins UIM claim from her 1999 motor vehicle accident. Because I have had no response from you, I am advising [Erie] to close their claim file as I believe the Statute of Limitations has expired." Erie's Opposition to Appellants' Petition for Appointment of Arbitrators and to Compel Arbitration, 1/18/11, at Exhibit R–3.

Thus, contrary to Appellants' contention, Erie's invocation of the statute of limitations defense was not done in bad faith, but in response to Appellants' lack of due diligence in pursuing their claim. The record is devoid of any action by Erie precluding Appellants from petitioning for the appointment of arbitrators and for compelling arbitration prior to December 2010. Despite Appellants' counsel's acknowledgement to Erie on September 5, 2006 that "we gotta get moving on this," Appellants remained idle until their incomplete submission of records in 2008.

In fact, Appellants' failure to act is longstanding, and extends back to their action against the tortfeasor Gradel. According to the docket, Appellants' suit was filed

only 6 days before the limitations period expired against Gradel. *See* Erie's Opposition to Petition for Appointment of Arbitrators and to Compel Arbitration, 1/18/11, at Exhibit R–1, Bucks County Docket, Case No.2001–00104, at 1–2. During the action's pendency, Gradel's counsel filed two motions to compel answers to discovery from Appellants, regarding which the trial court issued two orders compelling Appellants to respond. *Id.* at 2. Gradel's counsel moved to compel Appellants to sign an authorization filed by Gradel, which the trial court granted. Gradel then filed a motion for sanctions against Appellants, which was subsequently withdrawn only four days before it was scheduled to be heard. *Id.*

Our Supreme Court has explained that "[a] man must do justice before he asks equity." *The Sharon Iron Co. v. The City of Erie,* 41 Pa. 341 (1861). We have determined that "courts of equity will not relieve a party from the consequences of error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." *First Commonwealth Bank v. Heller,* 863 A.2d 1153, 1159 (Pa.Super.2005) *citing Home Owners' Loan Corp. v. Crouse,* 151 Pa.Super. 259, 30 A.2d 330, 332 (1943). In this case, Appellants failed to ensure that their petition to appoint arbitrators and to compel arbitration was filed in a timely fashion, and the record does not support equitable relief in their favor. We therefore affirm the trial court's order.

Order affirmed.

Judge GANTMAN concurs in the result.