J-A05002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIE INSURANCE EXCHANGE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MICHAEL BRISTOL AND RCC, INC. | |
| APPEAL OF: MICHAEL BRISTOL | No. 1119 EDA 2015 |

Appeal from the Order Entered March 20, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2013-12947

BEFORE: OLSON AND OTT, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED MAY 27, 2016**

Appellant, Michael Bristol, appeals from the trial court's March 20, 2015 order, which granted the motion for summary judgment filed by Erie Insurance Exchange (hereinafter "Erie"). After careful consideration, we are constrained to affirm the trial court's order because, as the trial court noted, the case at bar is controlled by this Court's opinion in ***Hopkins v. Erie Insurance Co.***, 65 A.3d 452 (Pa. Super. 2013).

The trial court ably summarized the underlying facts and procedural posture of this case. As the trial court explained:

> On [] July 22, 2005, [Appellant] was allegedly injured in a hit and run motor vehicle accident at or near the intersection of Bethlehem Pike and Tennis Avenue in Upper Dublin Township, Montgomery County. On the date of the alleged incident, [Appellant] was employed as a lineman for RCC, Inc. The incident is alleged to have occurred within the course and scope of [Appellant's] employment with RCC, Inc. . . .

*Former Justice specially assigned to the Superior Court.

RCC, Inc. was insured by Erie pursuant to a Pioneer Commercial Auto Fleet Policy. . . . Erie's Policy included an [Uninsured Motorist (hereinafter "UM")] Coverage Endorsement (the "Endorsement") providing coverage of [$500,000.00] per incident[,] non-stacking. The Endorsement contained an arbitration clause requiring disputes over liability and damages be determined by arbitration. The arbitration provision, however, mandates that disagreements regarding statutes of limitations be determined by a court of competent jurisdiction.[1]

_____

[1] In relevant part, the Endorsement's Arbitration provision declares:

ARBITRATION

Disagreement over:

1. whether or not anyone we protect is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or

2. the amount of damages;

shall be settled by arbitration. The decision of the arbitrators shall be limited to, and binding on, these two issues. . . .

All other disagreements shall be decided by a court of competent jurisdiction and *not* by arbitration. Disagreements to be determined by such court include, but are not limited to:

. . .

3. statutes of limitations;

. . .

After written demand for arbitration by either party, each party will select an arbitrator. These two will select a third. If no selection is made within 30 days, the Judge of the

*(Footnote Continued Next Page)*

On June 19, 2007, [Appellant's] attorney notified Erie of [Appellant's] [UM] claim. In response, on July 9, 2007, Erie sent a Reservation of Rights Letter to [Appellant's] attorney, as well as specific language addressing Erie's company policy as relates to notification of accident or claims. Erie also subsequently took a Statement Under Oath from [Appellant] on February 12, 2008. . . .

On August 18, 2010, new counsel for Erie sent a letter to Bristol's then counsel[,] advising of his assumption of representation. On September 7, 2010, Erie's counsel sent another letter confirming a conversation with [Appellant's] then counsel wherein [Appellant's] then counsel advised that he was going to appoint an arbitrator. In response, Erie's counsel sent a letter dated September 14, 2010[,] designating Erie's arbitrator. Thereafter, [Appellant] appointed an arbitrator and over a period from November 15, 2010 through September 4, 2012, Erie's counsel sent numerous letters inquiring of [Appellant's] release status[,] as [Appellant] was incarcerated through that entire time period. That correspondence went unanswered until [Appellant's] counsel hand wrote on Erie's counsel's letter of September 4, 2012 that [Appellant] was to be released from prison on September 10, 2012. The record . . . is devoid as to [Appellant's] actual release. . . . Simultaneously, for a brief time after their selection, some exchange occurred between the chosen arbitrators as to appointment of a neutral [arbitrator,] but no agreement was reached.

*(Footnote Continued)* ─────────────

Court of Record, in the county where the arbitration is pending, will appoint the third arbitrator.

. . .

In all other respects, any arbitration will follow the arbitration provisions of the Arbitration Act of 1927.

Endorsement, June 2003 Edition, at 4 (internal bolding omitted) (emphasis in original).

The record is devoid of any action by either party from September 10, 2012 until May 29, 2013, when Erie filed the instant Action for Declaratory Judgment seeking a determination that [Appellant's] [UM] claim is barred by the applicable four year statute of limitations[. 42 Pa.C.S.A. § 5525(a)(8).] . . .

Erie filed a Motion for Summary Judgment on or about September 11, 2014, seeking a [declaratory judgment in its favor]. [Appellant] filed an Answer to Erie's Motion for Summary Judgment on October 10, 2014. By order [entered on March 20, 2015, the trial court] granted Erie's Motion for Summary Judgment.

Trial Court Opinion, 9/10/15, at 1-3.

Appellant filed a timely notice of appeal. Appellant now raises the following claim to this Court:

Does the four year statute of limitations under 42 [Pa.C.S.A.] § 5525 bar a claim for uninsured motorist benefits when:

The parties had agreed to arbitrate the claim in accordance with the terms of the policy;

The parties had selected their respective arbitrators, but had not yet agreed upon the selection of a neutral arbitrator;

The claimant had provided a statement under oath to the insurer;

The insurer does not allege, and the trial court does not find, that the insurer was prejudiced by any delays in proceeding to arbitration?

Appellant's Brief at 4 (internal bullets omitted).

As this Court stated:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of

- 4 -

review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Englert v. Fazio Mech. Serv.'s, Inc.*, 932 A.2d 122, 124 (Pa. Super. 2007) (internal citations omitted).

A claim for UM benefits is subject to the four-year statute of limitations applicable to contract actions. 42 Pa.C.S.A. § 5525(a); *see also Boyle v. State Farm Auto. Ins. Co.*, 456 A.2d 156 (Pa. Super. 1983); *Hopkins*, 65 A.3d at 455-456 and 459. Moreover, under this Court's precedent, the four-year statute of limitations for UM benefits begins to run when: "(1) the insured was in a motor vehicle accident[;] (2) the insured sustained bodily injury as a result of that accident[;] and[,] (3) the insured knows of the uninsured status of the other owner or operator." *Boyle*, 456 A.2d at 162.

Here, Appellant was injured by a hit-and-run driver and Appellant never claimed that he could identify the driver of the vehicle that struck him. *See* Appellant's Answer to Erie's Motion for Summary Judgment, 10/10/14, at 1-3; Appellant's Memorandum in Opposition to Erie's Motion for Summary Judgment, 10/10/14, at 4-10. As such, under this Court's precedent, "a reasonable person would have known as of the day of the accident that the

vehicle [that hit him was] unidentified and therefore presumptively uninsured." ***Seay v. Prudential Prop. & Cas. Ins. Co.***, 543 A.2d 1166, 1169 (Pa. Super. 1988). Hence, under this Court's precedent, the statute of limitations for Appellant's UM claim began to run on the date of the accident – which was July 22, 2005. The statute of limitations then expired four years later, on July 22, 2009, after Appellant failed to file a *praecipe* for a writ of summons, a complaint, a petition to appoint arbitrators, or a petition to compel arbitration in the court of common pleas.

Moreover, even though Appellant demanded arbitration from Erie within four years following the accident, under this Court's precedent, Appellant's extra-judicial demand did not commence an "action" or toll the running of the statute of limitations. Rather, as this Court held in ***Hopkins***, to toll the running of the statute of limitations, an insured is required to file, in a court, a "petition to appoint arbitrators [or] to compel arbitration." ***Hopkins***, 65 A.3d at 462. Indeed, ***Hopkins*** is on all fours with the case at bar and demands that we affirm the trial court's order.

In the ***Hopkins*** case, Mr. and Mrs. Hopkins (collectively "the insureds") were insured under an automobile insurance policy issued by Erie; the coverage included underinsured motorist benefits and the policy contained a mandatory "arbitration provision constituting a valid agreement to arbitrate." ***Id.*** at 453 and 455.

On January 11, 1999, Mrs. Hopkins was involved in an automobile accident with an underinsured driver. On June 11, 2004, the insureds sent a

letter to Erie, "asking for permission to settle with the tortfeasor, []
demanding underinsured motorist arbitration, and naming their choice of
arbitrator."[2] *Id.* at 454.  Erie responded on June 28, 2004 and, within Erie's
response, Erie "grant[ed] permission for [the insureds] to settle with [the
tortfeasor,] and not[ed] Erie's 'understanding that [the insureds] are
presenting an [u]nderinsured [m]otorist claim in reference to this matter.'"
*Id.*  The insureds then settled with the tortfeasor on December 4, 2004.  *Id.*
at 459.

From 2004 until 2010, the insureds and Erie exchanged numerous
correspondences in an attempt to resolve the underinsured motorist claim.
These correspondences included:  multiple letters from Erie to the insureds,
requesting that the insureds "forward any and all medical records and any
and all wage loss records you have in reference to this loss;" the insureds'
responses to some of Erie's requests, including providing Mrs. Hopkins'
"medical records, reports, and bills" to Erie; Erie's request that Mrs. Hopkins
execute certain authorization forms, so that it could obtain "additional
records and information in reference to the [underinsured motorist] claim;"
and, Mrs. Hopkins' execution of some requested authorizations.  *Id.* at 454-
455.  However, the insureds' underinsured motorist benefits claim was never
settled with Erie and, on December 2, 2010, the insureds filed, in the court

_____

[2] We note that the insured sent Erie another demand letter on January 8,
2008. *Hopkins*, 65 A.3d at 453.

of common pleas, a petition to appoint arbitrators and to compel arbitration. *See id.* at 453-455. The trial court denied the petition, reasoning that the insureds' underinsured motorist claim was barred by the four-year statute of limitations. *Id.* at 455. The insureds appealed and raised three claims to this Court. These claims were:

> [1.] Whether the trial court made an error of law and manifestly abused its discretion in its calculation of the statute of limitations?
>
> [2.] Whether the trial court made an error of law and manifestly abused its discretion in determining that the statute of limitations was not equitably tolled?
>
> [3.] Whether the trial court made an error of law and manifestly abused its discretion in denying [the insureds'] petition for appointment of arbitrators and to compel arbitration?

*Id.* (internal quotations and citations omitted) (some internal capitalization omitted).

With respect to the insureds' claim that the trial court erred "in its calculation of the statute of limitations" for their underinsured motorist claim, we analogized the case to our prior precedent involving UM claims. *Id.* at 455-458. As noted above, under this Court's precedent, the statute of limitations for UM benefits begins to run when "the insured knows of the uninsured status of the [] owner or operator" who caused the motor vehicle accident. *Boyle*, 456 A.2d at 162. In keeping with this precedent, the *Hopkins* Court held that the statute of limitations for the insureds' underinsured motorist claim began to run "when the insured settles with, or

secures a judgment against, the underinsured owner or operator" that caused the motor vehicle accident. ***Hopkins***, 65 A.3d at 459. Thus, in the ***Hopkins*** case, the statute of limitations for the insureds' underinsured motorist benefits claim began to run on December 4, 2004, when the insureds settled with the tortfeasor. ***Id.***

Further, notwithstanding the fact that the insureds and Erie were required to arbitrate any dispute between them – and notwithstanding the fact that the insureds twice demanded arbitration from Erie and named their choice of arbitrator – the ***Hopkins*** Court held that the statute of limitations for the insureds' underinsured motorist benefits claim expired on December 4, 2008, as the insureds failed to file "their petition to appoint arbitrators and to compel arbitration" within the requisite time period. The ***Hopkins*** Court explained:

> we hold that the four-year statute of limitations on underinsured motorist claims begins to run when the insured settles with, or secures a judgment against, the underinsured owner or operator. Accordingly, [the insureds'] underinsured motorist claims in this case are barred by the statute of limitations. [The insureds] settled with the tortfeasor in the underlying action, on or about December 4, 2004. . . . [The insureds] therefore had until December 4, 2008 to file their petition to appoint arbitrators and to compel arbitration. [The insureds] did not file their petition until December 2, 2010.

***Id.*** at 459.

This Court further held that the numerous correspondence exchanged between Erie and the insureds – which were all done in an attempt to

resolve the underinsured motorist benefits claim – did not toll the statute of limitations. *Id.* at 460.

In this appeal, Appellant claims that the four-year statute of limitations is inapplicable to his case because he demanded arbitration from Erie and both he and Erie appointed their respective arbitrators. In the alternative, Appellant claims that Erie should be estopped from invoking the statute of limitations defense because Appellant's counsel "had no reason to believe that Erie was challenging the timeliness of [the] claim after it had appointed an arbitrator [and Erie] repeatedly inquir[ed] about the incarceration status of [Appellant]." Appellant's Brief at 20. These claims fail.

First, under the precedent established in *Hopkins*, Appellant's extra-judicial demand for arbitration did not commence his action and it did not toll the four-year statute of limitations. Certainly, in *Hopkins*, within the statutory time-period, the insureds twice demanded that the insurance company proceed to arbitration, and the *Hopkins* Court nevertheless held that the arbitration demands neither commenced the insureds' underinsured motorist benefits action nor tolled the running of the four-year statute of limitations. Rather, *Hopkins* held, the insureds had an obligation to "file [a] petition to appoint arbitrators and to compel arbitration" within the statutory time period – and that their failure to do so required the dismissal of their claim on statute of limitations grounds. *Hopkins*, 65 A.3d at 459.

Further, we note that the result reached in *Hopkins* is in accord with the wording contained in the relevant statute of limitations.

- 10 -

Pursuant to 42 Pa.C.S.A. § 5525(a), an "action upon a contract" must "be commenced within four years." 42 Pa.C.S.A. § 5525(a). As 42 Pa.C.S.A. § 5503 then declares, "[a] matter is commenced for the purposes of this chapter when a document embodying the matter is filed in an office authorized by [42 Pa.C.S.A. § 5103] (relating to transfer of erroneously filed matters) or by any other provision of law to receive such document." 42 Pa.C.S.A. § 5503(a). Since extra-judicial arbitration demands are not "filed" in any office authorized by law "to receive such document," the extra-judicial arbitration demand did not "commence" any "action." **See also** Pa.R.C.P. 1007 ("[a]n action may be commenced by filing with the prothonotary (1) a *praecipe* for a writ of summons, or (2) a complaint"); **see also Walker v. Providence Ins. Co.**, 1998 WL 195652 (E.D. Pa. 1998) (holding that an insured has "four years from th[e date he is injured by an unidentified, uninsured driver] within which to file his petition to compel arbitration" and that the appointment of an arbitrator does not toll the statute of limitations); **Liberty Mut. Fire Ins. Co. v. Weisbaum**, 2011 WL 4632479 (E.D. Pa. 2011) (holding that the statute of limitations had run on the insured's claim for uninsured motorist benefits because he failed to file a petition to compel in the court of common pleas, and "the appointment of [an] arbitrator did not toll [the] statute of limitations" on the claim).

Moreover, the appointment of the respective arbitrators in the case at bar did not toll the statute of limitations because, even if such action could act to toll the statute of limitations, the statute of limitations already expired

by the time the parties appointed their respective arbitrators.[3]   Thus, since the statute of limitations already expired, the appointment of arbitrators could not have "tolled" the statute of limitations.

Finally, in accordance with **Hopkins**, the extra-judicial correspondence between Appellant and Erie did not toll the statute of limitations.   To be sure, as the trial court explained:

> The [**Hopkins**] Court [] held [that an individual must file, in the court of common pleas, a "petition to appoint arbitrators and to compel arbitration" within the statutory time-period,] despite the undisputed factual record that the [insureds] had sent a demand letter to the carrier along with medical records, the carrier had subsequently requested additional medical records, and finally, authorizations to obtain medical records had been exchanged – all of which occurred during the applicable four year period.

Trial Court Opinion, 9/10/15, at 6-7.

Thus, in accordance with **Hopkins**, the statute of limitations in this case was not tolled merely because the parties were engaged in correspondence, in an attempt to resolve the uninsured motorist benefits claim.   Rather, pursuant to **Hopkins**, Appellant was at all times required to commence his "action" within the required time-period, by filing a *praecipe* for a writ of summons, a complaint, a petition to appoint arbitrator, or a petition to compel arbitration, with the prothonotary.

---

[3] The statute of limitations in this case expired on July 22, 2009 and the parties did not appoint their arbitrators until September 2010.

Simply stated, **Hopkins** binds this Court.[4]  Therefore, we conclude that the trial court did not err when it granted Erie's motion for summary judgment in this case.

Order affirmed.  Jurisdiction relinquished.

Justice Stevens concurs in the result.

Judge Ott files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/2016

---

[4] Our prior precedent mandates our current holding, however, we note that our precedent runs contrary to "the overwhelming majority" of jurisdictions that considered the issue and "concluded that the limitations period begins to run on a [UM/]UIM claim upon the insurer's breach of the insurance contract" – rather than upon the date of the accident or upon the date the insured knows that the tortfeasor is uninsured or underinsured. **American States Ins. Co. v. LaFlam**, 69 A.3d 831, 839-840 (R.I. 2013).  One concern is that Pennsylvania's rule of law may provide insurers with an incentive to delay and unnecessarily extend extra-judicial examinations, determinations, negotiations, and proceedings in response to the insured's claim until the statute of limitations has run.