# United States Court of Appeals
## For the First Circuit

No. 11-1562

AMERICAN STATES INSURANCE COMPANY,

Plaintiff, Appellee,

v.

JOANN LAFLAM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Lauren E. Jones, with whom Robert S. Thurston and Jones Associates were on brief, for appellant.
Anthony R. Leone, II and Leone Law, LLC on brief for Rhode Island Association for Justice, amicus curiae.
Kevin J. Holley, with whom Kevin N. Rolando and Gunning & LaFazia, Inc. were on brief, for appellee.

February 17, 2012

**LYNCH**, <u>Chief Judge</u>.  On April 25, 2007, JoAnn LaFlam was badly injured in an accident in Rhode Island while driving an automobile insured under a policy issued to her employer by American States Insurance Company (ASIC).  That policy, subject to certain exclusions and limitations, indemnifies its insureds from injuries caused by negligent uninsured or underinsured motorists.  When it became clear that the tortfeasors were underinsured, LaFlam requested and received authorization from ASIC to settle her claims pursuant to Rhode Island's uninsured and underinsured motorist (UM/UIM) insurance statute, R.I. Gen. Laws Ann. § 27-7-2.1.

Within three months of receiving authorization to settle, LaFlam and the tortfeasors agreed to a settlement of $1 million.  However, when LaFlam made a claim that ASIC pay the settlement amount under the UM/UIM policy, ASIC refused.  Instead, ASIC filed a federal lawsuit seeking a declaratory judgment that LaFlam's claim was too late because it did not comply with the policy requirement that a claim be made within three years after the date of the accident.  LaFlam, in turn, counterclaimed that ASIC had breached the contract and that the denial of the claim was in bad faith.  The district court granted ASIC's cross-motion for judgment on the pleadings and denied LaFlam's motion for judgment on the pleadings.  See <u>Am. States Ins. Co.</u> v. <u>LaFlam</u>, No. 10-357, 2011 WL 1532144, at *4 (D.R.I. Apr. 22, 2011).  LaFlam appealed.

-2-

Our examination of the Rhode Island statutory scheme, the cases interpreting the scheme, and the insurance policy itself persuades us that this appeal turns on unresolved questions of Rhode Island law. We are also persuaded the better course for resolving those questions is to certify the questions to the Rhode Island Supreme Court.

Rhode Island has clearly expressed a strong public policy against insurers using contractual language to limit an insured's recovery under the UM/UIM statute. See, e.g., Rueschemeyer v. Liberty Mut. Ins. Co., 673 A.2d 448, 450 (R.I. 1996); DiTata v. Aetna Cas. & Sur. Co., 542 A.2d 245, 247 (R.I. 1988). However, the Rhode Island Supreme Court has not had occasion to address whether considerations of public policy bar insurers from (1) imposing a contractual limitations period on UM/UIM claims which is shorter than the ten-year statute of limitations provided by statute, or (2) requiring that the limitations period begin to run on the date of the accident. These two aspects of the ASIC clause at issue, moreover, are interrelated. A short contractual limitations period that begins to run on the date of the accident may operate to bar an insured from recovery before the insured even knows she has a UM/UIM claim.

Because we have found "no controlling precedent" in Rhode Island law to guide us on these issues, we certify the question

identified below to the Rhode Island Supreme Court. <u>See</u> R.I. Sup. Ct. R., Art. I, R. 6(a).

I.

The material facts are not in dispute. Nearly one year after the accident, on April 3, 2008, LaFlam, through counsel, sent ASIC notice of a potential claim under ASIC's UM/UIM coverage. ASIC acknowledged the notice on April 23. Between September 2008 and May 2009, ASIC made several requests for additional information, including photographs of the damage to the vehicles and updates regarding LaFlam's medical status, lost wages, and medical bills.

The ASIC insurance contract specified that any insured wishing to settle with a UM/UIM tortfeasor must first request authorization to do so from ASIC. On January 25, 2010, LaFlam requested such authorization to settle her underlying tort claims with the two underinsured tortfeasors responsible for the accident. LaFlam also sent ASIC copies of the policy limit declaration sheets from the tortfeasors' insurers, a copy of the amounts already paid by those insurers, and a copy of the police report. On February 18, 2010, ASIC authorized LaFlam to settle the claims.

Three months later, on May 19, 2010, LaFlam sent ASIC a letter asserting a claim for payment of a settlement amount of $1 million, the ASIC policy limit. LaFlam alleges that ASIC's authorized representative told her not to request arbitration

-4-

because ASIC was still reviewing the file and would soon make LaFlam an offer. No offer appears to have been made.

On August 25, 2010, ASIC brought this action seeking a declaratory judgment that the three-year limitations provision contained in its UM/UIM policy "precludes LaFlam's present claim for underinsured motorist benefits under the policy." The three-year contractual limitations period is set out in a provision of the policy entitled, "Legal Action Against Us," which states:

> Any legal action against us under this Coverage Form must be brought within three years after the date of the 'accident'. However, this [paragraph] does not apply to an 'insured' if, within three years after the date of the 'accident', we or the 'insured' have made a written demand for arbitration in accordance with the provisions of this Coverage Form.

LaFlam counterclaimed for breach of contract and bad faith, arguing that any application of the three-year contractual limitations period was void as against Rhode Island public policy. In response, ASIC moved to sever and stay discovery on LaFlam's counterclaim for bad faith until her breach of contract counterclaim was resolved. Both parties moved under Rule 12(c) for a judgment on the pleadings.

The district court observed that "[a]ny provision that restricts the coverage afforded by [the UM/UIM statute] is 'void as a matter of public policy.'" Am. States, 2011 WL 1532144, at *3 (quoting Casco Indem. Co. v. R.I. Interlocal Risk Mgmt. Trust, 929

-5-

F. Supp. 65, 70 (D.R.I. 1996), rev'd on other grounds, 113 F.3d 2 (1st Cir. 1997)).    The court concluded, however, that the three-year contractual limitations period "operates not to restrict coverage, but to fix the time within which an insured may bring legal action against the insurer."  Id.  The court noted that the Rhode Island Supreme Court had upheld a one-year contractual limitations period in the fire insurance context, see DiIorio v. Abington Mut. Fire Ins. Co., 402 A.2d 745 (R.I. 1979), and a two-year contractual limitations period in the property insurance context, see Hay v. Pawtucket Mut. Ins. Co., 824 A.2d 458 (R.I. 2003).    The Rhode Island Supreme Court had also upheld a contractual limitations period governing notice of arbitration decisions in the UM/UIM context.  See Progressive N. Ins. Co. v. Lyden, 986 A.2d 231 (R.I. 2010).

Finally, the district court reasoned that while the Rhode Island General Assembly has governed the period of contractual limitations provisions in other contexts -- such as actions for breach of contracts for sale, actions for default under lease contracts, and actions for breach of warranty of quality -- it included no such restriction in the UM/UIM statute.  Am. States, 2011 WL 1532144, at *3 & n.8.

The district court did not address LaFlam's argument that the contractual limitations period is void as against public policy

because it begins to run from the date of the accident, rather than from the date that it becomes clear the insured has a UM/UIM claim.

The district court denied LaFlam's motion for judgment on the pleadings, and granted ASIC's cross-motion. Id. at *4. LaFlam appealed. LaFlam has filed an original motion with this Court requesting that we certify legal questions to the Rhode Island Supreme Court.

## II.

We sketch the background to explain our decision to certify. Rhode Island enacted its UM/UIM statute in 1962. See R.I. Gen. Laws Ann. § 27-7-2.1, as enacted by 1962 R.I. Pub. Laws ch. 161, § 1. Rhode Island's UM/UIM statute requires "that in each liability-insurance policy an insurer must provide some minimum protection against property damage and personal injury caused by an uninsured or a hit-and-run motor vehicle for the protection of persons insured thereunder." Ladouceur v. Hanover Ins. Co., 682 A.2d 467, 469 (R.I. 1996); see also R.I. Gen. Laws Ann. § 27-7-2.1. "[T]he purpose of enacting the uninsured-motorist coverage statute was to afford protection to the insured against economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles." McVicker v. Travelers Ins. Co., 785 A.2d 550, 553-54 (R.I. 2001) (quoting Pin Pin H. Su v. Kemper Ins. Cos./Am. Motorists Ins. Co., 431 A.2d 416, 419 (R.I. 1981)) (internal

quotation marks omitted).  "This statute was premised on the concept that responsible motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor."  Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 553 (R.I. 1990).  In 1985, the Rhode Island legislature expanded the definition of "uninsured motorist" to include underinsured motorists.  Id.

Rhode Island's UM/UIM statute provides that "[a] person entitled to recover [UM/UIM] damages . . . shall not be required to make a claim against or bring an action against the uninsured or underinsured tortfeasor as a prerequisite to recover damages from the insurer providing coverage pursuant to this section."  R.I. Gen. Laws Ann. § 27-7-2.1(h).  The UM/UIM statute also defaults to Rhode Island's ten-year statute of limitations for civil actions, see id. § 9-1-13(a), and it does not specify when that statute of limitations begins to run.  Furthermore, insureds who recover UM/UIM funds receive prejudgment interest at an annual rate of twelve percent.  See id. § 9-21-10(a).

The Rhode Island courts have found and enforced a strong public policy against contractually imposed restrictions on UM/UIM coverage.  See, e.g., Rueschemeyer, 673 A.2d at 450-51 (rejecting a policy that excluded government-owned vehicles from the definition of uninsured motor vehicles as "void as a matter of law" and "void as a matter of public policy" because it "carve[d] out an

exception . . . [that] impermissibly restrict[ed] coverage afforded by the statute"); see also Casco, 929 F. Supp. at 71 ("The Rhode Island Supreme Court . . . has regularly held that policy exclusions that limit the extent of uninsured motorist protection offered to the named insured violate the public policy underlying the uninsured motorist statute.").

In DiTata v. Aetna Casualty & Surety Co., for example, the Rhode Island Supreme Court explained that "[c]ontracts for uninsured-motorist coverage . . . must be construed in light of the public policy [of] . . . indemnification for an insured's loss rather than defeat of his or her claim." 542 A.2d at 247. "In order fully to effectuate these purposes, [the Rhode Island Supreme Court] has disallowed contractual limitations that curtail an insured's recovery in instances in which the insured has not recovered the amount of his or her actual loss." Id. at 248.

The validity of ASIC's UM/UIM insurance provision, which both imposes a three-year contractual limitations period on UM/UIM claims and specifies that the limitations period begins to run on the date of the accident, thus depends on whether it is void as against Rhode Island public policy. We think it is unclear whether the two components of the ASIC contractual limitations provision -- the three-year period and the defined accrual date, whether considered independently or in combination -- violate this public policy.

On the one hand, the Rhode Island Supreme Court has allowed contractual limitations periods to provide pre-suit notice before UM/UIM recovery suits. In Progressive Northern Insurance Co. v. Lyden, the Rhode Island Supreme Court considered a UM/UIM policy that required a party dissatisfied with an arbitrator's award to give written notice to the other party, within sixty days of the arbitrator's decision, of an intention to proceed with a lawsuit. 986 A.2d 231. The court enforced the provision against the insured, preventing him from recovering UM/UIM funds from his insurer. Id. at 235. The court based its holding on the conclusion that "a limitations period in an insurance policy is a term to which the parties are specifically bound." Id. (quoting Nat'l Refrigeration, Inc. v. Travelers Indem. Co. of Am., 947 A.2d 906, 910 (R.I. 2008)) (internal quotation marks omitted). The court explained that "[b]y entering into the insurance contract with [the insurer], [the insured] agreed to the terms of the policy, including the sixty-day notice period for reserving the right to file suit." Id.

In so holding, the Rhode Island Supreme Court relied heavily on cases involving contractual limitations periods in other insurance contexts. For example, the court explained that it had previously "strictly enforced a provision in a fire insurance policy barring legal action beyond one year after a loss." Id. (citing DiIorio, 402 A.2d at 747). Similarly, in the property

insurance context, the court explained that it had "held that an insured was bound by a limitations provision . . . barring legal action after two years of the date of loss." Id. (citing Nat'l Refrigeration, 947 A.2d at 910).

Further, the text of the statute itself does not address contractual limitations. The default limitations provision states that "all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after." R.I. Gen. Laws Ann. § 9-1-13(a) (emphasis added). The statute does not mandate that all contract actions must have a ten-year limitations period. This permissive language stands in contrast to statutes in which the Rhode Island General Assembly has expressly imposed a minimum limitations period, below which parties may not contract. See, e.g., id. § 6-51-5 ("An action for default under an automobile lease or loan agreement, including breach of warranty or indemnity, must be commenced within two (2) years after the cause of action accrued. By the original lease or loan agreement the parties may reduce the period of limitation to not less than one year."); id. § 6A-2-725(1) ("An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it."); id. § 39-12-28 ("[I]t shall be unlawful for any motor common carrier to provide by rule, contract, regulation, or otherwise, a

-11-

shorter period for the filing of claims than nine (9) months, and for the institution of suits than two (2) years . . . ."). Here, no such minimum is specified.

On the other hand, however, a shorter contractual limitations period may have the unique effect, present in the UM/UIM context but not in other insurance contexts, of barring recovery before the insured knows or has reason to know that she has a UM/UIM claim against her insurer. Sometimes, it does not become clear that the insured has such a claim until after the insured has attempted to obtain compensation from the tortfeasor. The insured may well not know at the time of the accident whether the tortfeasor is insured at all, and may well not know whether the tortfeasor is underinsured in light of the damages until long after the accident. Moreover, even once the insured becomes aware that she has a UM/UIM claim against her insurer, she does not acquire the right to sue the insurer until the insurer is in breach of the contract, for example by declining to pay a covered claim. Thus, as a practical matter, the two components of the contractual limitations clause may effectively bar recovery, and that could be thought to violate Rhode Island's policy of full UM/UIM coverage.

Rhode Island has no reported case law directly on point. However, "[c]ourts in other jurisdictions have addressed this issue and the overwhelming majority of these jurisdictions have concluded that the limitations period begins to run on a UIM claim upon the

-12-

insurer's breach of the insurance contract" rather than the date of the accident. Grayson v. State Farm Mut. Auto. Ins., 971 P.2d 798, 799 (Nev. 1998), modified on denial of reh'g (Nev. 1999); see, e.g., Shelter Mut. Ins. Co. v. Nash, 184 S.W.3d 425 (Ark. 2004); Allstate Ins. Co. v. Spinelli, 443 A.2d 1286 (Del. 1982); Hamm v. Allied Mut. Ins. Co., 612 N.W.2d 775 (Iowa 2000); Berkshire Mut. Ins. Co. v. Burbank, 664 N.E.2d 1188 (Mass. 1996); Whitten v. Concord Gen. Mut. Ins. Co., 647 A.2d 808 (Me. 1994); Metro. Prop. & Liab. Ins. Co. v. Walker, 620 A.2d 1020 (N.H. 1993); Wille v. Geico Cas. Co., 2 P.3d 888 (Okla. 2000); Safeco Ins. Co. v. Barcom, 773 P.2d 56 (Wash. 1989). The Rhode Island Supreme Court has often turned to other states' decisional law in the UM/UIM context. See, e.g., Amica Mut., 583 A.2d 550, 554 & n.5 (turning to other states for guidance on whether a double recovery exclusion is void as against the public policy of UM/UIM statutes).

In so holding, these courts have emphasized that the limitations period in a UM/UIM policy should not "be triggered until the UIM claim becomes ripe, eliminating the possibility that the limitations period will have run before the claim could be brought." Oanes v. Allstate Ins. Co., 617 N.W.2d 401, 407 (Minn. 2000). The Rhode Island Supreme Court has stated that "a claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" State v. Gaylor, 971 A.2d 611, 614 (R.I. 2009) (quoting

-13-

Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)).

By requiring the three-year contractual limitations period to run from the date of the accident, the ASIC policy may have the effect of requiring at least some insureds to file suit before their claims are ripe; that is, before the insurer determines whether it will cover the claim. The three-year limitations period may even require some insureds to file suit before it becomes clear that the tortfeasor is underinsured at all, particularly if the insured remains mired in legal battle with the tortfeasor and has not yet achieved a judgment.

ASIC responds that the Rhode Island Supreme Court has already answered this question in Metropolitan Property and Casualty Insurance Co. v. Barry, where it held that "[p]rejudgment interest [on a UM/UIM claim] begins to run when the action accrues for purposes of the statute of limitations," which begins on the date of the accident. 892 A.2d 915, 924-25 & n.5 (R.I. 2006). In our view, however, it is far from clear that Metropolitan Property, concerned with the different issue of the accrual date for prejudgment interest, resolves this case.

ASIC also argues that if the limitations provision begins to run only once the insurer denies the claim, a claimant could delay filing her claim for decades in order to accrue substantial prejudgment interest. Moreover, ASIC argues, once the claim is

-14-

filed and denied, the claimant would then have an additional period of years to bring suit, accruing even greater interest. These arguments, too, depend on the question of whether Rhode Island would recognize distinct limitations provisions for the filing of a UM/UIM claim and for the bringing of suit once the claim is denied, as well as the question of when those limitations provisions may begin to run.

This case, then, meets the requirements of the Rhode Island certification rule, which provides for certification "if there are involved in any proceeding before [the federal court] questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this Court." R.I. Sup. Ct. R., Art. I, R. 6(a).

Furthermore, federalism concerns motivate the certification. This case involves major state policy issues that "will certainly impact future cases." Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 119 (1st Cir. 2010) (certifying questions to the Massachusetts Supreme Judicial Court concerning the unauthorized practice of law); accord Fortin v. Titcomb, No. 10-2370, 2012 WL 230021, at *7 (1st Cir. Jan. 26, 2012) (to be published in F.3d) (certifying question regarding the complex relationship among several provisions of the

Maine Tort Claims Act governing damage awards against government employees); In re Engage, Inc., 544 F.3d 50, 57 (1st Cir. 2008) (explaining that certification is appropriate when questions of state law "clearly have implications which go beyond these parties"). There are strong federalism interests that are furthered by providing the state courts with the opportunity to decide underlying unsettled questions of state law like the one presented here. Cf. Growe v. Emison, 507 U.S. 25, 32 (1993) (noting that "principles of federalism and comity dictate" deferring to state courts "when the federal action raises difficult questions of state law bearing on important matters of state policy").

We therefore certify to the Rhode Island Supreme Court the following question:

> In light of the UM/UIM statute and Rhode Island public policy, would Rhode Island enforce the two provisions of the contractual limitations clause in this case?

We would welcome the advice of the Rhode Island Supreme Court on any other relevant aspect of Rhode Island law which it believes would aid in the proper resolution of this issue.

The clerk of this court is directed to forward to the Rhode Island Supreme Court, under the official seal of this court, a copy of the certified question and our decision in this case, along with a copy of the briefs and appendix filed by the parties in the federal proceeding and the district court record, which set

-16-

forth all facts relevant to the issues certified. We retain jurisdiction pending the Rhode Island Supreme Court's determination. The case shall be stayed until further order of the court.

No costs are awarded.