**Supreme Court**

No. 2012-80-M.P.
(No. 11-1562)

American States Insurance Company          :

                    v.                                       :

       Joann LaFlam.                              :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

American States Insurance Company     :

v.               :

Joann LaFlam.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court pursuant to a question certified by the United States Court of Appeals for the First Circuit in accordance with Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure.  The question centers on the combined effect of two components of a contractual limitations period contained in the uninsured/underinsured (UM/UIM) provision of an insurance contract issued by the plaintiff, American States Insurance Company (ASIC); one component specifies that legal action against ASIC under the policy must be brought within a three-year interval and the other provides that the three-year period begins to run on the date of the accident.   The Court of Appeals certified the following question to this Court:

> "In light of the UM/UIM statute[, G.L. 1956 § 27-7-2.1,] and Rhode Island public policy, would Rhode Island enforce the two provisions of the contractual limitations clause in this case?"

For the reasons that follow, we answer the certified question in the negative.[1]

---

[1] We gratefully acknowledge the <u>amicus</u> <u>curiae</u> briefs submitted by the New England Legal Foundation, the Rhode Island Association for Justice, and the Rhode Island Department of Business Regulation (DBR).

**Facts and Travel**

The back story of this case is straightforward and undisputed. On April 25, 2007, defendant, Joann LaFlam (LaFlam),[2] was involved in an automobile collision while operating a vehicle insured under a policy issued by ASIC to her employer. LaFlam alleges that she sustained serious injuries as a result of the collision. Almost one year later, on April 3, 2008, LaFlam sent ASIC written notice of a potential claim under ASIC's UM/UIM coverage. On April 23, 2008, ASIC acknowledged receipt of this notice and requested information on LaFlam's claim. Thereafter, ASIC contacted LaFlam four times between September 2008 and late May 2009 for additional information and updates regarding her medical condition.

The insurance contract between ASIC and its insured, LaFlam's employer, provided that a settlement with the UM/UIM tortfeasor required prior authorization from ASIC.[3] To that end, on January 25, 2010, LaFlam requested authorization from ASIC to settle her underlying tort claims against the two UIM tortfeasors. ASIC approved the request on February 18, 2010, and, on May 19, 2010, LaFlam sent ASIC a demand for $1 million, the policy limit, to settle her UIM claim.

ASIC did not formally deny the claim, but, instead, responded with this declaratory-judgment action, filed in the United States District Court for the District of Rhode Island, on August 25, 2010. ASIC asserted that, because LaFlam had failed to undertake legal action

---

[2] The record is unclear as to the spelling of LaFlam's first name. In her pleadings in the United States District Court for the District of Rhode Island and in the District Court's opinion, "Joann" is used. See American States Insurance Co. v. LaFlam, 808 F. Supp. 2d 400, 400, 401 (D.R.I. 2011). The United States Court of Appeals for the First Circuit and her attorney before this Court refer to LaFlam as "JoAnn." See American States Insurance Co. v. LaFlam, 672 F.3d 38, 38, 39 (1st Cir. 2012).

[3] LaFlam was an insured under the insurance policy because she was "occupying" a covered "auto" at the time of the collision.

against ASIC or submit a written demand for arbitration within the three-year limitations period contained in the policy, her UIM claim against ASIC was time-barred. The relevant clause of the policy provides as follows:

> "Any legal action against us under this Coverage Form must be brought within three years after the date of the 'accident'. However, this [p]aragraph * * * does not apply to an 'insured' if, within three years after the date of the 'accident', we or the 'insured' have made a written demand for arbitration in accordance with the provisions of this Coverage Form."

On the heels of LaFlam's answer and her assertion of numerous counterclaims,[4] the parties filed competing motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure; the dispositive issue at the heart of these motions was whether the three-year limitations period set forth in the policy was enforceable or was in violation of public policy. Additionally, LaFlam moved to certify two questions to this Court.[5]

The District Court denied LaFlam's motion for certification and entered judgment on the pleadings in favor of ASIC. The trial judge first determined that, because "[t]he limitations period in the [p]olicy operates not to restrict coverage, but to fix the time within which an insured may bring legal action against the insurer[,]" the clause did not violate public policy. American States Insurance Co. v. LaFlam, 808 F. Supp. 2d 400, 404 (D.R.I. 2011). He noted

---

[4] Although LaFlam alleged in her counterclaim for declaratory judgment that ASIC's authorized representative told her that "arbitration should not be requested as the file was being reviewed and an offer would be made[,]" she failed to press this allegation any further in the District Court. The District Court deemed it abandoned, LaFlam, 808 F. Supp. 2d at 402 n.3, and so shall we.

[5] LaFlam moved to have the following two questions certified to this Court:

> "1) Is a contractual three year statute of limitations provided within the uninsured motorist portion of an insurance policy void as against public policy[?], and 2) Does the statute of limitations provided within an uninsured motorist [insurance policy] begin to run prior to the time it is clear that the insured will not recover all sums from the tortfeasor(s)[?]"

- 3 -

that "the Rhode Island Supreme Court has had the opportunity to declare contractual limitations provisions in UM policies void as against public policy, but has declined to do so" and that, "although the Rhode Island General Assembly has expressly restricted contractual limitations provisions in other contexts, it has included no such restriction in the UM statute." Id. Although the District Court's analysis focused primarily on whether an insurer validly may shorten the limitations period from ten years to three years, the trial judge additionally determined that our decision in Metropolitan Property and Casualty Insurance Co. v. Barry, 892 A.2d 915, 924-25 (R.I. 2006), provided "[s]ufficient authority * * * to conclude that the limitations period for a UM claim, whether by statute or contractual provision, begins to run at the date of the accident." LaFlam, 808 F. Supp. 2d at 402 n.4.

On appeal to the Court of Appeals, LaFlam once again urged that two questions be certified to this Court.[6] The Court of Appeals concluded that "Rhode Island has clearly expressed a strong public policy against insurers using contractual language to limit an insured's recovery under the UM/UIM statute." American States Insurance Co. v. LaFlam, 672 F.3d 38, 39 (1st Cir. 2012). However, the Court of Appeals "found 'no controlling precedent' in Rhode Island law" to assist it in determining "whether considerations of public policy bar insurers from (1) imposing a contractual limitations period on UM/UIM claims which is shorter than the ten-year statute of limitations provided by statute, or (2) requiring that the limitations period begin to

---

[6] LaFlam requested that the Court of Appeals certify the following two questions to this Court:

"I.    Is a provision in the UM/UIM portion of an insurance policy issued in Rhode Island which reduces the time a UIM claim may be brought from the statutory 10 years to 3 years void as against public policy?

"II.   Is a provision in the UM/UIM portion of an insurance policy issued in Rhode Island which provides that the UIM coverage claims period begins to run on the date of the 'accident' void as against public policy?"

- 4 -

run on the date of the accident." Id. Significantly, the Court of Appeals concluded that the "two aspects of the ASIC clause at issue * * * are interrelated. A short contractual limitations period that begins to run on the date of the accident may operate to bar an insured from recovery before the insured even knows she has a UM/UIM claim." Id. Accordingly, the Court of Appeals certified the question quoted above to this Court. Id. at 44. We now proceed to answer the certified question.

**Standard of Review**

Rule 6(a) permits this Court to answer questions of law certified to it by federal courts:

> "This Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this Court."

Certified questions that properly are before us "are questions of law * * * reviewed de novo by this Court." In re Tetreault, 11 A.3d 635, 639 (R.I. 2011).

**Analysis**

**I**

In order to place the certified question into its proper context, we deem it necessary to survey the landscape of UM/UIM coverage in Rhode Island. The General Assembly enacted the UM/UIM statute, § 27-7-2.1, in 1962. P.L. 1962, ch. 161, § 1. Section 27-7-2.1 "requires insurance carriers to provide protection for those claimants who voluntarily contract with licensed carriers for liability coverage as against uninsured operators." Henderson v. Nationwide Insurance Co., 35 A.3d 902, 906 (R.I. 2012) (quoting DiTata v. Aetna Casualty and Surety Co., 542 A.2d 245, 247 (R.I. 1988)). "This statute was premised on the concept that responsible

motorists who carry liability insurance should not be uncompensated when they are without recourse against an uninsured tortfeasor." Id. (quoting Amica Mutual Insurance Co. v. Streicker, 583 A.2d 550, 553 (R.I. 1990)).

We repeatedly have explained that "[t]he purpose of enacting the uninsured-motorist coverage statute was to afford protection to the insured against 'economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles.'" Henderson, 35 A.3d at 906 (quoting McVicker v. Travelers Insurance Co., 785 A.2d 550, 553-54 (R.I. 2001)); see also Rueschemeyer v. Liberty Mutual Insurance Co., 673 A.2d 448, 450 (R.I. 1996); Pin Pin H. Su v. Kemper Insurance Companies/American Motorists Insurance Co., 431 A.2d 416, 419 (R.I. 1981) (recognizing this "broad statutory purpose" behind § 27-7-2.1); Aldcroft v. Fidelity and Casualty Co. of New York, 106 R.I. 311, 318, 259 A.2d 408, 413 (1969). Moreover, "[c]ontracts for uninsured-motorist coverage * * * must be construed in light of the public policy mandated by the Legislature." Henderson, 35 A.3d at 906 (quoting DiTata, 542 A.2d at 247). "The primary object remains indemnification for an insured's loss rather than defeat of his or her claim." DiTata, 542 A.2d at 247.

Public policy in this area, however, is not entirely one-sided. We also are mindful that "[t]he legislative purpose of the statute was not * * * 'to guard against all economic loss,' and we have held that reasonable limitations will be imposed on the construction of the uninsured-motorist statute to 'afford[ ] insurers some financial protection' from unwarranted claims." Henderson, 35 A.3d at 906 (quoting Ladouceur v. Hanover Insurance Co., 682 A.2d 467, 470 (R.I. 1996)); see also Streicker, 583 A.2d at 553 ("We must impose reasonable limitations on the extent that the uninsured-motorist statute is construed to protect an insured because public policy

- 6 -

also dictates that we construe the statute 'in a manner that affords insurers some financial protection.'" quoting DiTata, 542 A.2d at 248).

Several times since the enactment of § 27-7-2.1, this Court has been called upon to determine whether a particular provision of a UM/UIM policy violates the public policy of this state. Although the determination of whether a particular contractual provision violates public policy is case-specific, see Henderson, 35 A.3d at 908 n.11, 909 (declaring that "the terms of an insurance policy must be considered with reference to the specific matter before us" and finding the provision enforceable "[w]hen applied to the circumstances of this case," but noting that "[i]f the exclusion were applied to [other] circumstances * * *, its application may well be questionable in light of public policy"), our cases reveal some general guidelines.

On the one hand, UM/UIM policy provisions "that restrict coverage afforded by the uninsured-motorist statute are void as a matter of public policy." Nationwide Mutual Insurance Co. v. Viti, 850 A.2d 104, 107 (R.I. 2004) (quoting Rueschemeyer, 673 A.2d at 450). Additionally, "this [C]ourt has disallowed contractual limitations that curtail an insured's recovery in instances in which the insured has not recovered the amount of his or her actual loss." DiTata, 542 A.2d at 248. For example, we held in Rueschemeyer, 673 A.2d at 451, that a provision in a UM/UIM policy that excluded government-owned vehicles from the definition of "uninsured motor vehicle" "impermissibly restrict[ed] coverage afforded by the statute." See also Sentry Insurance Co. v. Castillo, 574 A.2d 138, 138, 140 (R.I. 1990) ("provision restricting coverage for accidents involving snowmobiles" held void as against public policy); Employers' Fire Insurance Co. v. Baker, 119 R.I. 734, 742-43, 383 A.2d 1005, 1009 (1978) ("excess-escape" clause held void as against public policy); Poulos v. Aetna Casualty & Surety Co., 119 R.I. 409, 412, 379 A.2d 362, 364 (1977) (deduction for workers' compensation benefits received by

insured held void as against public policy); <u>Pickering v. American Employers Insurance Co.</u>, 109 R.I. 143, 153, 282 A.2d 584, 590 (1971) ("excess-escape" clause held void as against public policy); <u>Aldcroft</u>, 106 R.I. at 319-20, 259 A.2d at 414 (deduction for workers' compensation benefits received by insured held void as against public policy).  Likewise, where a provision purports to deny UM/UIM coverage on impermissible grounds, this Court has not hesitated to declare the provision in violation of public policy.  <u>See</u> <u>Pin Pin H. Su</u>, 431 A.2d at 417, 419 (concluding that a provision "requir[ing] physical contact between the insured person or vehicle and the unidentified vehicle in order to establish coverage for injuries" violated public policy because the Court deemed it "wholly inappropriate to allow an insurance company to deny coverage on the sole ground of lack of physical contact when the claimant is able to prove by a fair preponderance of the evidence that his or her injuries resulted from the negligence of an unidentified motorist").

On the other hand, this Court has declared on several occasions that certain reasonable limitations on UM/UIM coverage did not violate the state's public policy that indemnification for an insured's loss is the primary purpose of the UM/UIM statute.  For example, policy provisions that seek to prevent an insured's double recovery have been upheld.  <u>See</u> <u>Aetna Casualty & Surety Co. v. Graziano</u>, 587 A.2d 916, 917, 919  (R.I. 1991) (upholding a provision that set off any recovery of UM/UIM benefits by the amount the claimant had already received under the liability section of the same policy because "[c]lear and unambiguous set-off provisions are valid attempts by the insurance companies to avoid claims for double recovery, which could result in prohibitive costs for insurance carriers as well as for those paying premiums, and as such are not contrary to public policy"); <u>Streicker</u>, 583 A.2d at 553 (upholding policy exclusion intended "to prevent an individual from recovering under both the liability and

the [UM/UIM] provisions of the policy"); DiTata, 542 A.2d at 248 (recognizing that a provision deducting from UM/UIM benefits any medical payments paid under the policy "is an important, legitimate limitation for the insurer * * * [that] works in conjunction with [UM] coverage to prevent double payment of medical expenses by the insurer"). Additionally, this Court consistently has upheld policy provisions that exclude UM/UIM coverage when the insured's injuries occur in a vehicle that the insured (or a family member) owns, but elects not to insure under the policy. See Viti, 850 A.2d at 107; Dellagrotta v. Liberty Mutual Insurance Co., 639 A.2d 980, 980-81 (R.I. 1994); Baker, 119 R.I. at 741, 383 A.2d at 1008-09; see also Malo v. Aetna Casualty and Surety Co., 459 A.2d 954, 956-57 (R.I. 1983) (a restriction of UM coverage to the insured and the insured's family members, but only those who did not own their own vehicles, did not violate public policy). Geographical-limitation provisions "applicable to both the liability portions of the policy and the uninsured-motorist provisions of the policy" also have been upheld. Pollard v. Hartford Insurance Co., 583 A.2d 79, 81 (R.I. 1990). Finally, this Court has recognized that provisions that reasonably "preclude[ ] coverage based on a particular use of an insured vehicle by the policyholder" may, in certain circumstances, not violate public policy. Henderson, 35 A.3d at 908; see id. at 908, 909 (holding that "for a fee" vehicle-use exclusion did not violate public policy "[w]hen applied to the circumstances of [that] case," but recognizing that different facts might compel a different conclusion); see also Murray v. Remuck, 108 R.I. 179, 182, 185, 273 A.2d 491, 493, 494 (1971) (upholding exclusion of UM coverage in circumstances when insured was employed or engaged in duties in connection with an automobile business).[7]

---

[7] ASIC contends that Henderson v. Nationwide Insurance Co., 35 A.3d 902, 908 (R.I. 2012), stands for the proposition that provisions in UM/UIM contracts will be invalidated "on public policy grounds only when they (1) 'narrow[ ] the definition of "uninsured motor vehicle"' or (2)

Notably, however, we have not had occasion to pass upon the enforceability of a contractual limitations period in a UM/UIM policy that sets the time in which legal action against the UM/UIM carrier must be initiated by the insured, by filing suit or demanding arbitration. Relying on our decision in Progressive Northern Insurance Co. v. Lyden, 986 A.2d 231, 235 (R.I. 2010), ASIC appears to dispute this observation. However, we deem this reliance misplaced for two reasons. First and foremost, the contractual limitations period in Lyden was fundamentally different in kind from the provision at issue in this case. In Lyden, 986 A.2d at 232, unlike in this case, the insured was not precluded from adjudicating his UIM claim, but merely challenged the arbitration award outside of the time period; the provision at issue provided that "[t]he decision of the arbitrator shall be binding upon the parties unless: * * * either party reserves his or her right to a jury trial * * * within sixty (60) days of the decision." In this case, by contrast, the contractual limitations period sets the time in which legal action against the UM/UIM carrier must be initiated by the insured in order to secure an adjudication—either by arbitration or civil action—in the first instance. Moreover, the insured's argument in Lyden was not that the limitations period should be declared void as against public policy, but that "the trial justice abused his discretion * * * when he rejected [the insured's] argument that he should be afforded relief from his failure to timely reject the award because of his attorneys' excusable neglect." Id. at 233. Thus, Lyden is inapposite to the certified question before us.

Finally, with respect to the limitations period on UM/UIM claims, we note that § 27-7-2.1 is silent both as to when a UM/UIM claim begins to accrue and as to the length of the

'reduce[ ] the amount of coverage to a quantity less than the statutory minimum.'" (Emphasis added.) To the contrary, in Henderson, 35 A.3d at 908, we merely stated that the provision under review in that case, unlike the provisions in three other cases, neither narrowed the definition of uninsured motor vehicle nor reduced the amount of coverage; we did not suggest that these two classes of provisions were the only limitations subject to invalidation on public-policy grounds.

- 10 -

limitations period. This Court held in Pickering, 109 R.I. at 150, 282 A.2d at 588, that, because "the insured's suit against his insurer over a policy contract * * * is fundamentally one in contract[,]" the statute of limitations applicable to contract actions governs UM/UIM claims. See G.L. 1956 § 9-1-13(a) ("Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."). We have not yet had occasion to address the question of when a cause of action against the carrier for UM/UIM coverage accrues.

## II

With this context in mind, we turn to the certified question. It is our task to determine whether the clause in the ASIC policy that requires a UM/UIM claimant to initiate "legal action" or make "a written demand for arbitration" "within three years after the date of the 'accident'" is unenforceable as against public policy.[8] Before the District Court and the Court of Appeals, LaFlam sought certification of two questions, each addressing a single component of the clause at issue. See nn. 5, 6, supra. The Court of Appeals consolidated these two questions into a single inquiry: "In light of the UM/UIM statute and Rhode Island public policy, would Rhode Island enforce the two provisions of the contractual limitations clause in this case?" We agree with our learned colleagues on the Court of Appeals that the proper analytical approach is to scrutinize the combined effect of the two components of this clause, rather than analyze each component in isolation.

---

[8] The policy defines the term "accident" as follows: "'[a]ccident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage[.]'" We will assume, without deciding, that the "accident" in this case, for purposes of triggering the commencement of the contractual limitations period, was the automobile collision that occurred on April 25, 2007.

The opinion of the Court of Appeals in this case succinctly explains the potential danger of a contractual limitations period that both (a) begins to run on the date of the accident and (b) is shorter than the statutory limitations period: "a shorter contractual limitations period may have the unique effect, present in the UM/UIM context but not in other insurance contexts, of barring recovery before the insured knows or has reason to know that she has a UM/UIM claim against her insurer." LaFlam, 672 F.3d at 43. As the Court of Appeals recognized, in some cases, "it [may] not become clear that the insured has such a claim until after the insured has attempted to obtain compensation from the tortfeasor. The insured * * * may well not know whether the tortfeasor is underinsured in light of the damages until long after the accident." Id. Thus, the clause under review in this case "may effectively bar recovery" because the three-year limitations period, which begins to run on the date of the accident, would impractically "require some insureds to file suit before it becomes clear that the tortfeasor is underinsured at all, particularly if the insured remains mired in legal battle with the tortfeasor and has not yet achieved a judgment." Id. at 43-44.

## A

Although the just-outlined specter is the product of the tandem effect of the shortened limitations period and the selection of the date of the accident as the triggering date, we deem most troubling the selection of the triggering date. By requiring the three-year contractual limitations period to run from the date of the accident, the policy in this case essentially provides that an insured's UM/UIM claim accrues, for purposes of the contract of insurance, on the date of the accident. ASIC maintains that this circumstance is perfectly consistent with our decision in Barry, which, ASIC contends, held that the statute of limitations on a UM/UIM cause of action begins to run on the date of the accident. We reject this reading of Barry, which addressed

- 12 -

"the appropriate calculation formula for prejudgment interest in [the] uninsured/underinsured motorist [context]." Barry, 892 A.2d at 916.

In Barry, 892 A.2d at 923, we confronted, inter alia, the issue of whether a claim for UM/UIM "benefits over and above any amount received from the tortfeasor or the tortfeasor's insurer include[s] the amount of prejudgment interest (beginning on the date of the injury) that accrued on the underlying claim for damages against the tortfeasor(s) through the date of any settlement with the tortfeasor(s)[.]" We concluded that a UM/UIM claim includes prejudgment interest that accrued on the underlying claim because "the contractual duties of the UM[/UIM] carrier are set forth in the insurance policy and begin at the date of the injury." Id. We noted that the insurance policy at issue required the UM/UIM carrier to "pay damages for bodily injuries * * * that the insured is 'legally entitled to collect from the owner or driver of an uninsured highway vehicle'" and that, "[i]n this state, an injured plaintiff who recovers damages in any civil action, is legally entitled to collect, both pecuniary damages, and '[prejudgment interest] * * * from the date the cause of action accrued[.]'" Id. at 923-24 (quoting G.L. 1956 § 9-21-10(a)). We determined that "an insured 'is legally entitled to collect' prejudgment interest from the date the [underlying tort] cause of action accrues, which we [held was] the date of the injury." Id. at 924. Our opinion in Barry did not purport to decide the very different issue of when a cause of action against one's insurance carrier for UM/UIM compensation accrues. See LaFlam, 672 F.3d at 44 ("[I]t is far from clear that [Barry], concerned with the different issue of the accrual date for prejudgment interest, resolves this case.").

Therefore, the issue of when a UM/UIM cause of action accrues is one of first impression in this jurisdiction. "'[T]he overwhelming majority of * * * jurisdictions [that have considered this issue] have concluded that the limitations period begins to run on a UIM claim upon the

insurer's breach of the insurance contract' rather than the date of the accident." LaFlam, 672 F.3d at 43 (quoting Grayson v. State Farm Mutual Automobile Insurance, 971 P.2d 798, 799 (Nev. 1998)).[9] After careful consideration, we are persuaded to join this majority.

[9] See, e.g., McDonnell v. State Farm Mutual Automobile Insurance Co., 299 P.3d 715, 728 (Alaska 2013) (UM cause of action only); Blutreich v. Liberty Mutual Insurance Co., 826 P.2d 1167, 1168 (Ariz. Ct. App. 1991); Shelter Mutual Insurance Co. v. Nash, 184 S.W.3d 425, 430 (Ark. 2004); Spear v. California State Automobile Association, 831 P.2d 821, 825 (Cal. 1992); Allstate Insurance Co. v. Spinelli, 443 A.2d 1286, 1292 (Del. 1982); Norfleet v. Safeway Insurance Co., 494 N.E.2d 720, 723 (Ill. App. Ct. 1986); Hamm v. Allied Mutual Insurance Co., 612 N.W.2d 775, 784-85 (Iowa 2000); Eidemiller v. State Farm Mutual Automobile Insurance Co., 915 P.2d 161, 168-69 (Kan. Ct. App. 1996), reversed on other grounds, 933 P.2d 748 (Kan. 1997); Palmero v. Aetna Casualty & Surety Co., 606 A.2d 797, 798-99 (Me. 1992); Lane v. Nationwide Mutual Insurance Co., 582 A.2d 501, 506-07 (Md. 1990); Berkshire Mutual Insurance Co. v. Burbank, 664 N.E.2d 1188, 1189 (Mass. 1996); Jacobs v. Detroit Automobile Inter-Insurance Exchange, 309 N.W.2d 627, 629-30 (Mich. Ct. App. 1981); Snyder v. Case, 611 N.W.2d 409, 416 (Neb. 2000); State Farm Mutual Automobile Insurance Co. v. Fitts, 99 P.3d 1160, 1162 (Nev. 2004); Metropolitan Property & Liability Insurance Co. v. Walker, 620 A.2d 1020, 1022 (N.H. 1993); Brooks v. State Farm Insurance Co., 154 P.3d 697, 700 (N.M. Ct. App. 2007); Wille v. Geico Casualty Co., 2 P.3d 888, 892 (Okla. 2000); Vega v. Farmers Insurance Co. of Oregon, 918 P.2d 95, 97-98 (Or. 1996), partially superseded by statute on other grounds as stated in Farmers Insurance Co. of Oregon v. Conner, 182 P.3d 878, 887 n.3 (Or. Ct. App. 2008); Alvarez v. American General Fire and Casualty Co., 757 S.W.2d 156, 158 (Tex. Ct. App. 1988); Safeco Insurance Co. v. Barcom, 773 P.2d 56, 60 (Wash. 1989); Plumley v. May, 434 S.E.2d 406, 411 (W. Va. 1993).

     Several other jurisdictions hold that a UM/UIM cause of action accrues when the insured settles with or receives a judgment against the tortfeasor. See, e.g., Coelho v. ITT Hartford, 752 A.2d 1063, 1066 (Conn. 1999) ("[A]n action for underinsured motorist benefits does not accrue until the limits of liability under the tortfeasor's policy have been exhausted."); Oanes v. Allstate Insurance Co., 617 N.W.2d 401, 406-07 & n.2 (Minn. 2000) (UIM claim only); Register v. White, 599 S.E.2d 549, 555 (N.C. 2004); Hopkins v. Erie Insurance Co., 65 A.3d 452, 459 (Pa. Super. Ct. 2013); Yocherer v. Farmers Insurance Exchange, 643 N.W.2d 457, 463-64 (Wis. 2002); cf. Polizos v. Nationwide Mutual Insurance Co., 767 A.2d 1202, 1210 (Conn. 2001) (holding that a UM cause of action accrues "when the plaintiff knew or should have known that the tortfeasor was uninsured"); Oganov v. American Family Insurance Group, 767 N.W.2d 21, 27 (Minn. 2009) ("[I]f a tortfeasor's insurer is judicially declared insolvent within six years of the date of the accident, a claim for uninsured motorist benefits accrues, and the limitations period begins to run, on the date the tortfeasor's insurer is declared insolvent."); Jackson v. State Farm Mutual Automobile Insurance Co., 880 So.2d. 336, 343 (Miss. 2004) ("[T]he Jacksons added State Farm to the suit more than three years after they knew the extent of Rebecca's injuries and knew the amount of [the tortfeasor's] insurance coverage. Accordingly, their claims against State Farm are barred by the three-year statute of limitations * * *.").

- 14 -

As a general matter, "a cause of action accrues and the applicable statute of limitations begins to run at the time of the injury to the aggrieved party." Hill v. Rhode Island State Employees' Retirement Board, 935 A.2d 608, 616 (R.I. 2007) (quoting DeSantis v. Prelle, 891 A.2d 873, 878 (R.I. 2006)); see also Barry, 892 A.2d at 924 n.5 ("The cause of action accrues on the first date an injured party has a right to seek judicial relief." citing Cardi Corp. v. State, 561 A.2d 384, 387 (R.I. 1989)). Additionally, as we explained in Pickering, 109 R.I. at 150, 282 A.2d at 588, an insured's action against his or her UM/UIM carrier is an action for breach of contract:

> "Although a tortious injury is an incidental element in the insured's suit against his [or her] insurer over a policy contract, the action is fundamentally one in contract. The plaintiff here would have no action if it were not for the coverage provided by her insurance policy. The insurer's liability rises solely from the insurance contract and nothing else." (Emphasis added.)

See Barry, 892 A.2d at 923 ("[A]lthough UM[/UIM] cases may present 'a melding of contract and tort principles,' the contractual duties of the UM[/UIM] carrier are set forth in the insurance policy * * *." (emphasis added)); id. at 925 (the UM/UIM carrier's "contractual obligation to pay the claim is controlled by the terms of the policy"); see also Berkshire Mutual Insurance Co. v. Burbank, 664 N.E.2d 1188, 1189 (Mass. 1996) ("The basis of an insurer's obligation to pay underinsured motorist benefits 'is not its actions resulting in personal injury but, rather, its contractual promise to indemnify against such injury.' * * * Hence, 'an action on an uninsured motorist policy is an action in contract for indemnification[.]'" quoting Royal-Globe Insurance Co. v. Craven, 585 N.E.2d 315, 319, 320 (Mass. 1992)).

---

Notably, only a handful of jurisdictions have adopted the date-of-accident accrual date urged by ASIC. See, e.g., Colo. Rev. Stat. Ann. § 13-80-107.5(3) (West 2005); La. Rev. Stat. Ann. § 9:5629 (2007); Woodall v. Travelers Indemnity Co., 699 So.2d 1361, 1363 (Fla. 1997); Commercial Union Insurance Co. v. Wraggs, 284 S.E.2d 19, 21 (Ga. Ct. App. 1981); Green v. Selective Insurance Co. of America, 676 A.2d 1074, 1080 (N.J. 1996).

- 15 -

In light of these well-established principles, we are satisfied that the insured is not injured by his or her UM/UIM carrier and, therefore, has no right to seek judicial relief against the insurer unless and until the insurer breaches the insurance contract. "That breach does not occur until the insurer refuses payment (or arbitration if applicable)." Palmero v. Aetna Casualty & Surety Co., 606 A.2d 797, 799 (Me. 1992); see also McDonnell v. State Farm Mutual Automobile Insurance Co., 299 P.3d 715, 728 (Alaska 2013) (explaining that an alleged breach of a UM contract "occurs when the insurer denies a claim or clearly refuses a demand for payment under the insurance contract"). A UM/UIM cause of action accrues on the date of the breach. See Burbank, 664 N.E.2d at 1189 ("The general rule is that a contract action accrues at the time the contract is breached. * * * Prior to the time when the contract is violated there is no justiciable controversy, and it would be illogical to let the statute of limitations for bringing an action begin to run before the action can be brought."). As the Nevada Supreme Court has explained:

> "[W]hile an insured may formally or informally pursue a claim for UM or UIM coverage against his or her insurer starting from the date of the accident, * * * a cause of action for breach of contract against the insurer does not accrue until the insurer formally denies UIM coverage benefits." State Farm Mutual Automobile Insurance Co. v. Fitts, 99 P.3d 1160, 1162 (Nev. 2004) (emphases added).

ASIC insists that the date of the accident must be the accrual date for a UM/UIM claim because, were it otherwise, an insured would be permitted "to sit on his or her claim even for decades or more[,]" while prejudgment interest continues to accrue on the underlying tort claim. The Alaska Supreme Court recently rejected a similar argument in McDonnell:

> "An insurance company can require the insured to make a claim or notice of potential claim within a certain period of time without requiring the insured to file suit against the insurer. And, * * * once insurance companies have received notice of a claim, they

- 16 -

'are not forced to stand by helplessly as memories fade and physical evidence is lost,' but are 'entitled to bring declaratory judgment actions to determine coverage at their own convenience.'" McDonnell, 299 P.3d at 728 (quoting Estes v. Alaska Insurance Guaranty Association, 774 P.2d 1315, 1318 n.1 (Alaska 1989)).

We similarly are not convinced that ASIC's doomsday scenario will come to fruition. A UM/UIM carrier has not only a fiduciary duty to its insured,[10] but it also possesses the means to prevent the belated assertion of overly stale claims. Moreover, we are hard-pressed to envision a scenario in which an insured who is in need of benefits and who has a viable UM/UIM claim, occurring only because the tortfeasor's policy limits were less than the insured is "legally entitled to recover because of bodily injury, sickness, or disease, including death, resulting from that injury, sickness or disease," § 27-7-2.1(g), would delay asserting the claim and remain less than fully compensated any longer than necessary.

Finally, at oral argument, ASIC appeared to take a somewhat different tack. Relying on subsections (g) and (h) of § 27-7-2.1,[11] ASIC argued that a UM/UIM cause of action accrues

---

[10] We take this opportunity to reiterate that "an insurance company has a fiduciary obligation to act in the 'best interests of its insured,' and not its own pecuniary interest at all times." Skaling v. Aetna Insurance Co., 799 A.2d 997, 1012 (R.I. 2002) (quoting Bolton v. Quincy Mutual Fire Insurance Co., 730 A.2d 1079, 1081 (R.I. 1999)); see also Asermely v. Allstate Insurance Co., 728 A.2d 461, 464 (R.I. 1999) ("The insurer's duty is a fiduciary obligation to act in the best interests of the insured.").

[11] General Laws 1956 § 27-7-2.1(g) provides:

> "For the purposes of this section 'uninsured motorist' shall include an underinsured motorist. An 'underinsured motorist' is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits or damages that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness, or disease, including death, resulting from that injury, sickness or disease."

Section 27-7-2.1(h) provides as follows:

when the insured receives information about the respective <u>limits</u> of the tortfeasor's insurance policy and the particulars of the insured's UM/UIM policy. According to ASIC, once the insured determines that the limits of his or her UM/UIM policy exceed those of the tortfeasor's policy, the insured has a claim for UM/UIM benefits. ASIC maintains that it is at this point that an insured can notify his or her UM/UIM carrier of the existence of the claim <u>and file suit or proceed to arbitration</u>. ASIC argues that the fact that the amount of the damages may be unknown until the insured settles with or obtains a judgment against the tortfeasor is of no consequence; the insured simply can request a stay of the proceedings against the UM/UIM carrier until the extent of the insured's claim and his or her damages is ascertained. We reject this argument.

For one thing, the point in time when the insured learns that the limits of the applicable UM/UIM policy are greater than those of the tortfeasor's policy may never come to pass. If an insured with UM/UIM policy limits of $100,000 is injured by a tortfeasor with a policy limit of $250,000, the insured's UM/UIM policy limits do not exceed the tortfeasor's policy limits. If it is later determined that the insured suffered $300,000 in damages as a result of the tortfeasor's negligence, however, the insured would nonetheless have a claim for UIM benefits against his or her insurer. <u>See</u> § 27-7-2.1(g) ("An 'underinsured motorist' is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the

---

"A person entitled to recover damages pursuant to this section shall not be required to make a claim against or bring an action against the uninsured or underinsured tortfeasor as a prerequisite to recover damages from the insurer providing coverage pursuant to this section. In the event that the person entitled to recover against an underinsured motorist recovers from the insurer providing coverage pursuant to this section, that insurer shall be entitled to subrogation rights against the underinsured motorist and his or her insurance carrier. Release of the tortfeasor with the consent of the company providing the underinsured coverage shall not extinguish or bar the claim of the insured against the underinsurance carrier regardless of whether the claim has been liquidated."

limits or damages that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness, or disease, including death, resulting from that injury, sickness or disease." (emphasis added)); see also Archambault v. Federal Insurance Co., 690 A.2d 1348, 1350 (R.I. 1997) ("Because § 27-7-2.1(g) is phrased in the disjunctive, the underinsured motorist's liability coverage need only be less than either the insured's limits or the damages she is entitled to recover."); id. ("[E]ven in those situations in which the insured's damages exceed the underinsured motorist's coverage but the insured's underinsured-motorist limits are less than the underinsured motorist's liability-insurance coverage, the insured is still entitled to recover from his or her own insurer under § 27-7-2.1(g)."). Therefore, the accrual date for a UM/UIM cause of action cannot be the date advocated by ASIC at oral argument because that date simply would be inapplicable for an entire subset of UIM cases.

Furthermore, the notion that a UM/UIM claimant would submit his or her claim to arbitration or resort to expensive litigation before becoming aware of the extent of his or her damages strikes us as problematical. ASIC conceded at oral argument that a UM/UIM claimant who submits his or her claim to arbitration would be at the mercy of the arbitrator with respect to whether the arbitration proceedings would be stayed in order to conduct discovery to ascertain the extent of the claimant's damages. But parties do not submit a dispute to arbitration in order to obtain a stay for discovery purposes; they submit to arbitration in order to obtain a decision from the arbitrators.

The Minnesota Supreme Court's decision in Oanes v. Allstate Insurance Co., 617 N.W.2d 401, 405-06 (Minn. 2000), illustrates the problem inherent in ASIC's position. Under the then-prevailing Minnesota law, the statute of limitations on a UIM claim began to run on the date of the accident, but a UIM claim was "not [considered] ripe until the underlying tort claim

- 19 -

[was] resolved, either by settlement or judgment." Id. at 405.[12]  The court recognized that these two legal propositions at times were at odds: "This interplay between the two rules creates the possibility that the statute of limitations may run on a valid UIM claim before the claimant can determine whether the claim exists.  That result is inconsistent with our sense of justice and one we cannot abide."  Id. at 405.  The court noted that "[i]t ha[d] been suggested that this undesirable result can be avoided" if a potential UIM claimant commences suit within the applicable statutory period from the date of the accident "and then request[s] that the trial be stayed until the tort action was either settled or litigated to completion."  Id. (quoting Cattnach v. State Farm Insurance Co., 577 N.W.2d 251, 254 (Minn. Ct. App. 1998)).  The court was not persuaded:

> "Although this solution provides a vehicle for both rules to remain viable, it does so at a cost.  That cost is the invitation to bring litigation, including the attendant burden and expense placed on finite judicial resources as well as on the parties, for cases in which no justiciable controversy currently exists or may ever exist.  We decline to extend such an invitation."  Id. at 405-06.

We similarly reject ASIC's suggestion of such a "hurry up and wait" approach to its contractual responsibilities, whereby potential UM/UIM claimants rush to file actions or make demands for arbitration only to request an immediate stay until the insured's underlying tort action can be resolved.  Moreover, we fail to glean any viable purpose for such an absurd approach to UM/UIM coverage, save to allow the carrier to escape its obligations.[13]

---

[12] The court overruled its prior rule that the statute of limitations on a UIM claim begins to run on the date of the accident and instead adopted as the accrual date the date on which the insured settles with or obtains a judgment against the tortfeasor.  Oanes, 617 N.W.2d at 406-07 & n.2.

[13] In a last-ditch effort to stem the tide, ASIC asserts in its reply brief that this Court should conclude that the contractual limitations period in the ASIC policy is reasonable because the DBR approved this provision and this approval should be entitled to deference from this Court.  We note that this argument, which is nowhere to be seen in ASIC's opening brief to this Court,

Accordingly, for these reasons, we today join the overwhelming majority of our sister states and hold that a UM/UIM cause of action, which "is fundamentally [an action] in contract," Pickering, 109 R.I. at 150, 282 A.2d at 588, accrues on the date that the UM/UIM contract allegedly is breached, which we reiterate is the date on which the UM/UIM insurer denies the claim or clearly rejects a demand for payment or arbitration under the UM/UIM policy.

## B

Having determined that a UM/UIM cause of action accrues at the time the insurance contract is breached, we conclude that the contractual limitations period in this case is void as against public policy. The provision under review, which both shortens the period in which a UM/UIM claim may be asserted from the ten-year statute of limitations and fixes a date on which that shortened period begins to run that is earlier than the accrual date for the cause of action, is void and unenforceable as against the public policy that underlies § 27-7-2.1.

In reaching this conclusion, we find the Alaska Supreme Court's recent decision in McDonnell instructive. In McDonnell, 299 P.3d at 728, the court first held that the date of the alleged breach of the UM contract is the accrual date for a UM claim. The court was then tasked with determining whether the contractual limitations period in that case, which set the date of the accident as the accrual date, was enforceable. Id. at 732. The Alaska Supreme Court concluded that it was not:

has been effectively rebutted by the DBR in its amicus brief; the DBR asserts that, because "[t]he [DBR] does not intend its review [of UM/UIM policy provisions] to be a comprehensive evaluation of the legal effect of the contractual provision" and "[t]he form review process has none of the indicia of the administrative processes under the [A]dministrative [P]rocedures [A]ct[,]" the DBR's review process is not to be accorded administrative deference. Moreover, we are of the opinion that the DBR's review process, even if entitled to some degree of deference, could never "make an unlawful policy lawful." McDonnell, 299 P.3d at 732 (quoting Ennen v. Integon Indemnity Corp., 268 P.3d 277, 288 (Alaska 2012)).

"By shortening the accrual date for UM claims, State Farm's contractual limitation provision attempts to shorten the limitations period before an insured like McDonnell has a justiciable cause of action against her insurer.

"* * * [I]t is illogical and unreasonable to contractually require commencement of the limitations period for a UM claim before the insured has a justiciable cause of action against her insurer. If the limitations period for a UM claim commenced on the date of the accident, the insurer could potentially deny an insured's claim or refuse payment shortly before the limitations period ends, leaving the insured with insufficient time to file suit. Similarly, the insurer could deny the insured's claim shortly after the limitations period ends, thereby barring the insured from filing suit at all. Given these practical considerations, we hold that to the extent State Farm's contractual two-year limitation provision purports to trigger the commencement of the limitations period before an insured's cause of action against the insurance company has accrued, the policy provision is unreasonable and unenforceable." Id. at 733.

We agree with these observations and conclude that the contractual limitations provision in this case is void as against public policy because, by selecting an earlier accrual date for UM/UIM claims, ASIC has attempted to force insureds like LaFlam to file suit or make a written demand for arbitration before a justiciable cause of action may even exist. This provision therefore impermissibly restricts UM/UIM coverage and frustrates the public policy concerns embodied in the state's UM/UIM statute.[14] Because this provision cannot be reconciled with our

---

[14] We reject ASIC's attempt to draw a distinction between contractual provisions that restrict UM/UIM coverage, on the one hand, and provisions, like the one involved in this case, that "act[ ] to fix the time in which a claim can be brought." At least in the context of the contractual limitations provision in this case, this argument strikes us as relying on a distinction without a difference. Provisions that "act[ ] to fix the time in which a claim can be brought" can, in some circumstances, fix such an unreasonable time period as to amount to an effective restriction on coverage. The provision in this case, which both shortens the time frame in which a UM/UIM claim must be brought and selects a triggering date that is earlier than the accrual date for the UM/UIM cause of action, may have such an effect. See LaFlam, 672 F.3d at 43 ("[A] shorter contractual limitations period [that runs from the date of the accident, as opposed to the date of the insurer's alleged breach of the contract,] may have the unique effect, present in the UM/UIM

pronouncement that "[t]he primary object [of § 27-7-2.1] remains indemnification for an insured's loss rather than defeat of his or her claim[,]" it cannot stand. DiTata, 542 A.2d at 247.

We conclude by noting that our holding in this case is limited: we need not and do not decide whether an insurance policy may properly contain a shortened time period within which a UM/UIM claim may be brought after the cause of action accrues and, if so, whether a three-year time period, as was chosen in this case, would be reasonable. We have explained that "reasonable limitations will be imposed on the construction of the uninsured-motorist statute to 'afford[ ] insurers some financial protection' from unwarranted claims[,]" and we do not retreat from that pronouncement today. Henderson, 35 A.3d at 906 (quoting Ladouceur, 682 A.2d at 470). Accordingly, we express no opinion as to whether an insurer may permissibly narrow the limitations period from the statutory ten-year period when the limitations period under the policy begins to run on the date of the insurer's alleged breach of the UM/UIM policy.

## Conclusion

For the reasons articulated above, we answer the certified question in the negative. The papers in this case are remanded to the United States Court of Appeals for the First Circuit.

---

context but not in other insurance contexts, of barring recovery before the insured knows or has reason to know that she has a UM/UIM claim against her insurer.").



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** American States Insurance Company v. Joann LaFlam.

**CASE NO:** No. 2012-80-M.P.
(No. 11-1562)

**COURT:** Supreme Court

**DATE OPINION FILED:** July 2, 2013

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:** N/A

Certified Question by the United States Court of Appeals for the

First Circuit

**JUDGE FROM LOWER COURT**: N/A

This case came before the Supreme Court pursuant to a question

certified by the United States Court of Appeals for the First Circuit

in accordance with Article 1, Rule 6 of the Supreme Court Rules of

Appellate Procedure.

**ATTORNEYS ON APPEAL:**

For Plaintiff: Kevin J. Holley, Esq.

For Defendant: Lauren E. Jones, Esq.